Fred G. Hamilton et als., In Equity

*vs.*

The Portland Pier Site District et als.

Cumberland.    Opinion March 11, 1921.

*Where two or more municipal corporations or political bodies are wholly or partly coincident in territory, they are nevertheless regarded as separate bodies for the purposes of constitutional debt limitation unless the contrary is expressed in the constitution. The constututional requirement is met, if the municipality or district enjoying special benefits from a public improvement is required to bear the burden of a greater percentage of tax caused by such improvement than the state at large, provided such percentage is not disproportionate to the special benefits that will accrue to it. When a part of a statute which is unconstitutional and invalid is separable from, and independent of a valid and constitutional part, the former may be rejected and the latter may stand.*

1.    The Charter of the City of South Portland provides that "every such ordinance, order, resolution or vote (involving the appropriation or expenditure of money to an amount which may exceed three hundred dollars) shall be read twice with an interval of at least three days between the two readings before being finally passed." The act of the Legislature creating the Portland Pier Site District (Comprising the cities of Portland and South Portland) was accepted by the city council of South Portland, but was not read twice with an interval of three days.

Such procedure was not necessary. It is clear that the above quoted language of the City Charter has reference to the appropriation of the *City's* money, and not to that of an independent municipal corporation, though including in part the same territory.

2. Assuming without deciding that the debt of the City of South Portland plus its proportionate share of the proposed bond issue of the Portland Pier Site District will exceed five per cent of South Portland's valuation the constitution is not thereby contravened.

The bond issue creates a debt of another corporation. · It is settled by numerous judicial authorities that where two or more municipal corporations or political bodies are wholly or partly coincident in territory, they are nevertheless regarded as separate bodies for the purposes of constitutional debt limitation unless the contrary is expressed in the constitution.

3. Under the constitution of Maine taxes upon tangible property must "be apportioned and assessed equally according to the just value thereof." It is obvious that a dollar of district property will bear a much larger share of the tax burden to be caused by the projected public wharves, than a dollar of property outside the district.

But charging upon a city, town or district enjoying special benefits from a public improvement a percentage of the tax burden caused thereby greater than that borne by the state at large but yet proportionate to such special benefits does not produce, but on the other hand, prevents inequality. When the benefit and burden are reasonably proportionate, the constitutional requirement is satisfied.

The popular conviction underlying the adoption of the constitutional amendment of 1919 is apparent. It was that Maine's advantageous geographical position and natural features if supplemented by adequate wharf and port facilities promise large growth in maritime commerce and that such growth will enhance the prosperity and promote the welfare of the state and its people. If this conviction is well founded it requires no argument to demonstrate that the Port of Portland will enjoy a much greater share of such growth and prosperity than will the state at large.

It is not clear and manifest that the act imposes upon the district a tax burden which is disproportionate to the special benefits that will accrue to it.

4. Section 8 of the act creating the Port of Portland authorizes the directors of the port to lease wharves that may be built in pursuance of the act "under such covenants and conditions as they may prescribe."

The act by its broad and general terms purports to authorize the directors to lease for private as well as public purposes.

In so far as the act authorizes leasing for private purposes it contravenes the constitution.

This however does not render the entire act void. The remainder stands unchallenged and the power to assess and collect taxes in furtherance of the valid portion remains in full force and virtue.

When as in this case a part of a statute which is unconstitutional and invalid is separable from, and independent of a valid and constitutional part, the former may be rejected and the latter may stand.

The petitioners have not shown that they are entitled to an injunction restraining the proposed bond issue by the Portland Pier Site District.

On report. This is a bill in equity brought by fourteen taxable inhabitants of the City of South Portland under the provisions of Par. 13 of Sec. 6 of Chap. 82 of the R. S., seeking to restrain the Portland State Pier Site District from issuing $325,000 in coupon bonds of the District. The petitioners contend that the issuance of such bonds is for the purpose of raising and paying out money for a purpose not authorized by law, hence illegal and void, for the following reasons: That the act creating the Portland State Pier Site District has never been properly or legally accepted by the City of South Portland; that the issuance of such bonds in such amount would create an obligation of the City of South Portland which added to its other debts and liabilities would carry it beyond its constitutional debt limitation, and that it would contravene the provisions of Section 8, Article 9 of the Constitution of the State, in causing unequal, unjust and double taxation. The cause was heard upon the bill, answer, and replication, and by agreement of parties, reported to the Law Court upon so much of the evidence as was legally admissible, the Law Court to determine all questions of law and fact and render judgment in accordance therewith. Bill dismissed.

The case is fully stated in the opinion.

*W. R. & E. S. Anthoine*, for plaintiffs.

*Charles E. Gurney, and Frederic J. Laughlin*, for defendants.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

DEASY, J. Omitting unimportant details, the circumstances giving rise to this litigation are these: The constitution of Maine, as amended in 1919, provides that the credit of the State may be loaned and bonds issued "for the purposes of building and maintaining public wharves and for the establishment of adequate port facilities in the State of Maine." By Chapter 84, as amended by Chapter 123 of the Special Laws of 1919, "The Port of Portland" is established and the offices of "Directors of the Port of Portland" created. These

directors·are empowered to secure land and rights and to lay out and build "such piers with buildings and appurtenances, docks, highways, waterways, railroad connections, storage yards and public warehouses as in the opinion of the directors may be. desirable."      .

By Section 8 of said act the directors are empowered to lease said piers, etc., for a term not exceeding five years, and with the approval of the Governor and Council for a term not exceeding twenty years, the income to be paid into the treasury of the State of Maine. ·      ·

By Section 15. of the same act the State Treasurer is authorized to issue bonds under the direction. of the Governor and Council· and with their approval to disburse the proceeds for the purpose of carrying out the provisions of the act.   Chapter 123, however, contains this condition:   "But no money shall be available from said bonds or the proceeds thereof until a site or location for said pier shall have been provided by the city of Portland or the city of South Portland, or·both, or by a district created for such purpose." (Sec. 6.)

At the same session of the Legislature by special act, being Chapter 117, "The Portland State Pier Site District" was incorporated, comprising the·territory and people within the limits of the City of Portland and ·the City of South Portland.        ·

The district·thus incorporated was authorized to issue its bonds in a sum not exceeding four hundred thousand dollars and with funds thereby obtained to acquire a site for the proposed State piers, and having so acquired it to "convey, transfer and set over the land so acquired to the Directors of the Port of Portland who shall hold it as the property of the State of Maine."   Chap. 117, Sec. 6.

By the terms of the act it did not become effective until "accepted by the city council of each of said cities at special meetings thereof duly called and held for the purpose."   Chap. 117, Sec. 12.      .

The act was accepted by the councils of both cities.   Thereupon and for the purposes of the act the proper officers of the district voted to issue bonds of the district to the amount of $325,000 and to issue warrants to the assessors of each of said cities requiring them to assess sums necessary for interest and sinking fund.        ·

Claiming said votes to be illegal and invalid, the petitioners, fourteen citizens, residents and taxable inhabitants of South Portland, have brought this proceeding which is a bill in equity praying that the district and its officers be enjoined from carrying the same into effect.      .

The objections raised to the legality of the votes are four-fold:

(1)   That the vote of the city council of South Portland accepting the act incorporating the district is illegal and ineffectual.

(2)   That the issuance of the bonds provided for in the vote will increase the indebtedness of the City of South Portland so that it will exceed the debt limit of five per cent prescribed by the constitution.

(3)   That the project involves unequal taxation, contrary to the provisions of the constitution.

(4)   That the proposed piers are not to be "public wharves," within the meaning of the constitutional amendment of 1919, and that the purpose is not such a public purpose as will warrant and justify taxation.

## ACCEPTANCE BY THE CITY COUNCIL OF SOUTH PORTLAND.

The charter of the City of South Portland provides that "every such ordinance, order, resolution or vote (involving the appropriation or expenditure of money to an amount which may exceed three hundred dollars) shall be read twice with an interval of at least three days between the two readings before being finally passed, and the vote upon its final passage shall be taken by roll-call." Special act of 1895, Chapter 242.

The act creating the Portland Pier Site District was accepted by the South Portland city council unanimously by roll-call at a special meeting called for the purpose, but it was not read twice with an interval of three days. The petitioners contend that this omission is fatal to its validity.

A subordinate body created by the Legislature cannot dispense with or waive procedure established by legislative act. 28 Cyc., 332. Nor can it be presumed that the Legislature by the granting of the Pier Site Charter intended to repeal or alter the City Charter. 36 Cyc., 1094; *Starbird* v. *Brown*, 84 Maine, 238; *State* v. *Donovan*, 89 Maine. 452. If the vote accepting the Pier Site District charter were a vote involving "the appropriation or expenditure of money" within the purview of the city charter it would be ineffectual because lacking conformity to procedure ordained and made imperative by the Legislature.

But it is clear that the above quoted language of the city charter has reference to the appropriation of the *city's* money and not to that

of an independent municipal corporation, though including in part the same territory. The vote of acceptance conforms to all legislative requirements.

## PRINCIPLES OF INTERPRETATION.

The other objections are based upon constitutional grounds. Certain canons of construction are so well established that they need only be referred to without prolonged discussion:—

The wisdom, reasonableness and expediency of statutes and whether they are required by the public welfare are subject to exclusive and final determination by the law making power. As to these matters the courts have no duty and no responsibility. *State* v. *Mayo*, 106 Maine, 68; *Dirken* v. *G. N. Paper Co.*, 110 Maine, 374; *Laughlin* v. *Portland*, 111 Maine, 490.

Legislative power is measured not by grant, but by limitation. It is absolute and all-embracing, except as expressly or by necessary implication limited by the constitution. *Sawyer* v. *Gilmore*, 109 Maine, 169; *Laughlin* v. *Portland*, supra.

The court will pronounce invalid only those "statutes that are clearly and conclusively shown to be in conflict with the organic law." *State* v. *Rogers*, 95 Maine, 98.

"If a statute is susceptible or two interpretations, and one of the interpretations will render the statute unconstitutional, and the other will not, the latter should be adopted." *State* v. *Intoxicating Liquors*, 80 Maine, 62.

## FIVE PER CENT DEBT LIMIT.

The 34th amendment to the State Constitution provides that "no city or town (subject to an exception here immaterial) shall hereafter create any debt or liability which single or in the aggregate with previous debts or liabilities shall exceed five per centum of the last regular valuation of the said city or town." The petitioners allege that the debt of South Portland plus its share of the proposed district bond issue will exceed five per cent of the city's valuation. This allegation is disputed. Assuming without determining it to be true, however, the constitution is not clearly shown to be violated.

"Applying well known rules of constitutional construction to the language of amendment 1 (now XXXIV) above quoted it is obvious that it applies only to cities and towns. The language of the amend-

ment is clear, plain and unambiguous. It can apply to cities and towns only and not to any other forms of municipal or quasi municipal bodies." *Kennebec Water District* v. *Waterville*, 96 Maine, 254. The pertinency of this authority is challenged on the ground that the Kennebec charter did not provide for raising money by taxation. It is true that in the contemplation of the act interest and sinking fund were to be provided for by water rates. But in that case, as in the instant case, district bonds were to be issued. Such bonds constitute a debt. Whether or not a debt of the city was the problem solved in the Kennebec case and is the precise question involved in the present case.

This view is supported generally by the authorities. "Where two or more municipal corporations or political bodies are wholly or partly coincident in territory they are nevertheless regarded as separate bodies for the purposes of constitutional debt limitations unless the contrary is expressed in the constitution." Gray on Limitations of Taxing Power, Section 2148; *Wilson* v. *Sanitary District*, 133 Ill., 433,—27 N. E., 203; *Ex-parte Newport*, 141 Kentucky 329,—132 S. W., 580; *Vallely* v. *Park Commissioners*, 16 N. D. 25,—111 N. W., 615; *Hyde* v. *Ewert*, 16 S. D. 133,—91 N. W., 474; *Adams* v. *East River Institute*, 136 N. Y. 52; *Monroe County* v. *Harrell*, 147 Ind., 500,—46 N. E., 124.

UNEQUAL TAXATION.

In Maine taxes upon tangible property must "be apportioned and assessed equally according to the just value thereof." 36th Amendment to the Constitution of Maine. It is obvious that a dollar of district property will bear a much larger share of the tax burden to be caused by the projected public work than a dollar of property outside the district. The petitioners contend that this is unconstitutional because productive of inequality in tax apportionment.

But charging upon a city, town or district enjoying special benefits from a public improvement a percentage of the tax burden caused thereby greater than that borne by the State at large but yet proportionate to such special benefits does not produce, but on the other hand, prevents inequality. When the benefit and burden are reasonably proportionate, the constitutional requirement is satisfied. This view is supported by numerous authorities which we need only cite without quoting.

*Walton* v. *Greenwood*, 60 Maine, 356; (Town tax for site for county court house)

*Sandy River Plantation* v. *Lewis & Maxcy*, 109 Maine, 476; (Forestry district tax)

*Merrick* v. *Inhabitants of Amherst*, 12 Allen, 500; (Local taxation for establishing State agricultural college)

*Holt* v. *Somerville*, 127 Mass., 412; (Special assessment upon property benefitted by public park)

*Hanscom* v. *City of Lowell*, 165 Mass., 419; (City authorized to raise money to aid State textile school)

*Miller* v. *County Commissioners*, Md., 69 Atl., 118; (Tax imposed upon and for the benefit of certain counties and excluding certain other counties)

*Maltby* v. *Tautges*, Minn., 52 N. W., 858; (Highway district tax)

*Arnold* v. *Knoxville*, Tenn., 90 S. W., 469; (Improvement districts)

*Stewart* v. *Road & Bridge District*, Florida, 71 So., 50; (Bridge District)

*Borrowdale* v. *Comm'rs*, N. M., 163 Pacific, 721; (Road District)

*Cook* v. *Port of Portland*, 20 Ore., 580; (Local assessment for part expenses of improving port of Portland, Oregon).

The popular conviction underlying the adoption of the constitutional amendment of 1919 is apparent. It was that Maine's advantageous geographical position and natural features if supplemented by adequate wharf and port facilities promise large growth in maritime commerce and that such growth will enhance the prosperity and promote the welfare of the State and its people. If this conviction is well founded it requires no argument to demonstrate that the port of Portland will enjoy a much greater share of such growth and prosperity than will the State at large.

It is not clear and manifest that the act imposes upon the district a tax burden which is disproportionate to the special benefits that will accrue to it.

### ARE THE PROPOSED WHARVES TO BE PUBLIC?

Under the constitution taxes may be imposed for public uses only.

"Taxation by the very meaning of the term implies the raising of money for public purposes and excludes the raising if for private objects and purposes." *Allen* v. *Jay*, 60 Maine, 127; *Perkins* v.

*Milford,* 59 Maine, 318; *State* v. *Telegraph Co.,* 73 Maine, 526; *Laughlin* v. *Portland,* 111 Maine, 490.

The constitutional amendment of 1919 in authorizing the use of State funds for wharves, limits such use to the building and maintenance of "public wharves."

As thus implied and as determined by judicial authorities, wharves though commonly public may be private.

"Piers or landing places, and even wharves, may be private, or they may be in their nature public, although the property may be in an individual owner; or, in other words, the owner may have the right to the exclusive enjoyment of the structure, and to exclude all other persons from its use; or he may be under obligation to concede to others the privilege of landing their goods, or of mooring their vessels there, upon the payment of a reasonable compensation as wharfage; and whether they are the one of the other may depend, in case of dispute, upon several considerations, involving the purpose for which they were built, the uses to which they have been applied, the place where located, and the nature and character of the structure." *Dutton* v. *Strong,* 1 Black U. S., 33; *Weems S. B. Co.* v. *Peoples S. B. Co.,* U. S. S. Co., 53 L. Ed., 1024; 30 A. & E. Ency., 472; 40 Cyc., 901.

What test must be applied to determine the public character of a wharf?

Not the meeting or displacing of tidal or public waters. *Wetmore* v. *Gas Light Co.,* 42 N. Y., 384. Not merely ownership by, nor leasing for the benefit of the State.

A wharf that is a public utility under R. S., Chap. 55, Sec. 15 is a public wharf, but Chapter 55 makes compensation for use an essential element. A wharf is likewise public if it is open to free public use.

Moreover a wharf which supplies the connecting link between a highway and a line of common carriers by water is entitled to be classed as public, notwithstanding that it may be devoted exclusively to the business of such carriers.

But as determined by numerous authorities, some of which are above cited, a wharf may be private. The owner or lessee may "have the right to the exclusive enjoyment of the structure and to exclude all other persons from its use." (*Dutton* v. *Strong,* supra).

The Directors of the Port of Portland are by Sec. 8 of Chap. 84 empowered to lease wharves without limitation as to purpose; the

statute by its broad unqualified terms authorizes or attempts to authorize leases to private persons for their own exclusive business or other purposes.

If the statute were susceptible of two interpretations we should adopt the interpretation which sustains rather than that which defeats it.

If the statute were ambiguous we might read into it a legislative intent not clearly found within its four corners.

But the language of Section 8 of the act is plain, clear, unambiguous and unqualified. It authorizes the directors to lease "under such covenants and conditions as they may prescribe." It purports to authorize leasing for private as well as public uses.

In so far as Section 8 authorizes leasing for private purposes it contravenes the constitution. This however does not render the entire act void.

It cannot be questioned that the primary intent of Section 8 is to authorize leasing for public purposes. A reading of the entire act makes this intention manifest.

Where an unconstitutional and invalid portion of a statute is separable from and independent of a part which is valid the former may be rejected and the latter may stand.

*Packard* v. *Lewiston,* 55 Maine, 456; *Cole* v. *County Commissioners,* 78 Maine, 538; *Vial* v. *Penniman,* U. S., 26 L. Ed., 602; *Supervisors* v. *Stanley,* U. S., 26 L. Ed., 1044.

This principle plainly and clearly applies to the facts in this case. The directors cannot lease wharves for private uses. They have power to lease for public purposes, and in furtherance of such powers bonds may be issued and taxes assessed and collected.

The bill in equity therefore should not be sustained.

*Bill dismissed.*