STATE OF MAINE
*vs.*
UNION OIL COMPANY OF MAINE

York.   Opinion, February 3, 1956.

*Boyd Bailey*, Assistant Attorney General,
*William Donahue*, for plaintiff.

*Armstrong, Marshall & Melnick*, for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

TAPLEY, J.   On report.   This case originated in the Municipal Court of the City of Biddeford and comes to this court on an Agreed Statement of Facts.   This procedure, in

taking this case directly to the Law Court on Agreed Statement from the Biddeford Municipal Court, is authorized by Chapter 82 of the Public and Special Laws of 1881.

The only issue presented for determination is whether the statute, being Chapter 420 of the Public Laws of 1955, is valid or is unconstitutional in that it violates the due process or equal protection clause of the U. S. Constitution or Sections 1 or 6 or Article I of the Maine State Constitution.

The questionable statute reads as follows:

**Chapter 420.**

> **"Sec. 200-A. Signs.** No signs stating or relating to the price of motor fuel, and no signs designed or calculated to cause the public to believe that they state or relate to the price of motor fuel, other than one or two signs of a size not larger than 6 inches by 8 inches and displayed on each pump or dispensing unit, shall be posted or displayed on or about the premises where motor fuel is sold at retail or displayed within view of any public highway."

This law became effective on August 20, 1955.

There were two criminal warrants issued against the respondent, Union Oil Company of Maine, a corporation, on the thirtieth day of August, 1955, returnable to the Municipal Court of the City of Biddeford, one warrant alleging that the respondent "unlawfully did post and display upon the premises where said Union Oil Company of Maine sold motor fuel at retail, a sign relating to the price of motor fuel which said sign was then and there larger than 6 inches by 8 inches, to wit, a circular sign measuring 3½ feet in diameter and said sign reading 'New-Era Gasoline, Save 4c Per Gal.' " and the other warrant charged that the respondent "unlawfully did post and display upon the premises where said Union Oil Company of Maine sold motor fuel at retail, a sign stating and relating to the price of motor

fuel, which said sign was then and there larger than 6 inches by 8 inches, to wit, 3 feet by 3½ feet, and said sign reading 'Save, Highest Octane, Lowest Prices, .269/10, Tax. Inc.' " It was agreed that the respondent, Union Oil Company of Maine, committed the acts complained of in these complaints dated August 30, 1955 and that they were committed in places and at the times set forth in the complaints. It is to be noted that the respondent does not admit that these acts complained of violated any valid law of the State of Maine. It is further agreed that the signs in no way obstructed the view of traveling motorists or that the use of them violated any law of the State of Maine excepting Chap. 420, P. L., 1955, which law is being attacked by these proceedings.

The respondent is engaged in the sale of motor fuels as an independent retail dealer as distinguished from that retail dealer who sells nationally advertised brands of motor fuel. The respondent became an independent retail dealer in motor fuels on April 1, 1950 by opening a service station at Biddeford, Maine and has been continually so engaged to the present time. It has confined itself to the sale of a private brand of gasoline known as "New-Era Gasoline" since the commencement of its operation on April 1, 1950. It has expanded its service to include eight stations in this State, all of which specialize in the sale of "New-Era Gasoline."

The business policy of the respondent is to sell its product at lower prices than those charged by dealers of the so-called nationally advertised brands. Pursuant to the policy of selling its product at lower prices, the respondent has displayed within view of passing motorists, and on its own premises, the type of signs which are complained of in the warrants.

There are certain photographs taken shortly prior to August 20, 1955 depicting the kind and composition of the

signs used by the respondent at its service stations and which form the basis of the complaints.

The constitutional provisions involved are: Article XIV of the Amendments to the Federal Constitution:

"- - - - nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

and Sec. 1 of Article I of the Constitution of the State of Maine:

"All men - - - have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness."

The respondent has abandoned any contention that Sec. 6 of Article I of the Constitution is involved in this case. According to our view of the issues, we find it unnecessary to discuss this section which deals with the right of an accused in a criminal case to demand the nature and cause of the accusation.

The issues of law set forth by the respondent are:

"I.    Whether the retail sale of motor fuel per se is a business so affected with the public interest as to warrant the exercise of the police power in the regulation of same without some showing of a particular evil affecting the public.

II.    Assuming that the Legislature found or assumed that some evil existed which warranted this legislation, whether Chapter 420, P. L. 1955 bears a reasonable relation to the evil sought to be cured.

III.    Whether Chapter 420, P. L. 1955 violates the equal protection clauses of our State and

Federal Constitutions in that it is discriminatory in its effect."

The Maine Statute, in essence, provides that if any signs are used stating or relating to the price of motor fuel or signs designed or calculated to cause the public to believe that they state or relate to the price of motor fuel, they shall be restricted to a number of not more than two and to a size not larger than 6 inches by 8 inches to be displayed on each pump or dispensing unit. These restrictions as to the signs concern premises where motor fuel is sold at retail or displayed within view of any public highway. Under this statute no other signs of any description relating to the price of motor fuel or designed or calculated to cause the public to believe that they state or relate to the price of motor fuel are permitted. *State* v. *Miller*, 12 A. (2nd) Page 192 (Conn.) (1940). The *Miller* case concerns the constitutional aspect of a law very similar to the Maine Statute wherein the retail price of gasoline or other fuel for motor vehicles must be displayed on a sign not exceeding 126 square inches in size. No other signs affecting the price of gasoline or other fuel for motor vehicles are permitted to be displayed on the premises.

In this case no objection was made to that provision of the statute which required the price of gasoline to be displayed on the pumps, referring, of course, to the sign limited to a size of 126 square inches. The part objected to as being unconstitutional was that portion of the law which forbade the display of price signs on other parts of the premises or in the vicinity. It is interesting to note that the defendant in this case was also engaged in the sale of a motor fuel which was not nationally known or widely advertised. The court said in its opinion, on page 194:

"The only grounds advanced in support of the constitutionality of the provisions of the act in question are that it might protect the public from fraud

and that it might conduce to the safety of automobile drivers upon the highways."

The Connecticut Court found that portion of the statute prohibiting the posting or displaying of any sign showing the sale price of motor fuels on or within the vicinity of the premises and the displaying of any price signs exceeding 126 square inches in size in any other place excepting the pumps to be unconstitutional. *State* v. *Hobson,* 83 A. (2nd) Page 846 (Del.) (1951).

The act under consideration requires price signs for the sale of motor fuel to be restricted to a sign not larger than 4 inches by 6 inches and that no other price signs shall be posted or displayed on or about the premises. Defendant's principal attack is that the provisions of the act deprive him of property without due process of law and violate both the State and Federal Constitutions. The Supreme Court of Delaware held that the limitation upon the size of signs advertising the price of motor fuels are wholly unrelated to the prevention of fraud and that the statutory prohibition of the limitation is unreasonable and arbitrary and in violation of the constitutional restrictions embodied in the Fourteenth Amendment of the Federal Constitution. *Levy, et al.* v. *City of Pontiac, et al.,* 49 N. W. (2nd) Page 80 (Mich.) (1951).

Constitutional attack was made on an ordinance which provided that no signs or placards stating the price of gasoline other than signs not larger than 12 by 12 inches attached to the pumps or dispensing devices shall be maintained on premises where gasoline is sold or offered for sale. The decision states on page 82, in part:

"The size of signs which plaintiff may care to use, and their location at points other than the pumps, if such signs are not misleading or fraudulent, may

not be regulated by the legislative body of defendant city."

and on page 83:

"The ordinance bears no reasonable relation whatsoever to public peace, health, morals, welfare or safety."

*Town of Miami Springs, et al.* v. *Scoville,* 81 So. (2nd) Page 188, (Fla.) (1955).

This Florida case, of origin as recent as June 15, 1955, concerns itself with the validity of an ordinance of the Town of Miami Springs regulating the size and location of signs displayed by gasoline filling stations to advertise the price of their gasoline. The ordinance provides that the price signs shall not be larger than 12 inches in height and 12 inches in width, to be posted on dispensing equipment and at no other place on the premises. It was found that this ordinance was unconstitutional in that the legislative restrictions involved injure a party on a competitive basis, representing unconstitutional restraints on use and enjoyment of one's business and property and in effect take property without due process of law, in violation of constitutional guarantees.

*State* v. *Guyette,* 102 A. (2nd) Page 446 (R. I.) (1954).

The constitutionality of two statutory sections are involved, the first one regulating size and number of price signs requiring showing of governmental tax signs to be maintained on the dispensing devices, and the other section prohibiting the use of price signs "posted or displayed on or about the premises where motor fuel is sold at retail and within view of any public highway or reservation." The court declared the first section as constitutional but as to that section last referred to, carrying a prohibition against signs on any portion of premises excepting the pumps, the determination was one of unconstitutionality.

There have been a substantial number of jurisdictions other than those specifically set forth above which have held a statute such as the one now under our consideration as being unconstitutional and it would serve no efficient purpose to analyze in detail these other cases.

We find, however, that there are two states, namely, Massachusetts and New York, which have passed upon a similar question with the resulting opinions that the acts are constitutional.

*Slome* v. *Godley*, 23 N. E. (2nd) Page 133.

The Massachusetts Statute requires the pumps to be conspicuously marked with the price of the motor fuel dispensed, using signs of a size not larger than 8 inches by 10 inches and no other price signs to be used or displayed about the premises. In the same statute there are further regulations affecting the use of figures, including fractions, in that they shall be all of the same size. The court said on page 135:

> "It is apparent from a reading of the statute that its design was to prevent fraud in the retail sale of gasoline."

This statement, of course, must have been based on the statute as a whole. The wording of the Maine Act does not convey any reasonable impression that it was designed for the purpose of the prevention of fraud upon the public. It says nothing about the size of the figures to be used. It only treats of size and placement of price signs. Maine has a separate statute regulating figures used on gasoline price signs. Section 200 of Chap. 100, R. S., 1954 provides that signs advertising the sale of motor fuel "shall either contain a statement of the taxes included in said price, or, without specifying the amount thereof, shall state that such taxes are included in said price. All figures, including fractions, upon said signs, other than figures and fractions used in any price computing mechanism constituting a part of any pump or dispensing device, shall be of the same size."

Attention is directed to *Merit Oil Co.* v. *Director of Division of Necessaries of Life* (1946) 319 Mass. 301 wherein the same statute as was concerned in the *Slome* case *(supra)* again received the approval of constitutionality. Our preference is not to follow the Massachusetts' ruling but rather that of the weight of authority.

The New York jurisdiction in the case of *People* v. *Arlen Service Stations, Inc.*, 31 N. E. (2nd) page 184, declares constitutional a local law of the City of. New York which regulates the sale of motor fuel by prescribing the size of signs, uniformity of numbers of selling price, addition of governmental tax figures to be attached to pump or other dispensing device, and that no price signs shall be posted or maintained on other parts of the premises. The respondent was convicted of violation of Sec. B36-101.0 of the Administrative Code of the City of New York. This conviction was reversed by the Appellate part of the Court of Special Sessions with one dissenter. This court determined that that portion of the act prohibiting in effect the use of price signs on any portion of the premises excepting the pumps was unconstitutional. The New York Court of Appeals overruled the court below by declaring the entire law constitutional. .

A police power which does not operate unreasonably is not always invalid even though it may incidentally affect rights guaranteed by the Constitution. Police power, however, is not without its limitations since it may unreasonably affect private rights and thus do violence to those rights guaranteed under either Federal or State Constitutions. 11 Am. Jur., Sec. 259, page 991.

A constitutional guarantee protects one's property rights not only from confiscation by legislative acts but also from an unjustifiable impairment of those rights. A deprivation of a person's property, within the meaning of this constitutional guarantee, may take place by destroying its value,

restricting its profitable use or imposing such conditions as to the use of it that seriously impairs its value. 11 Am. Jur., Sec. 260, page 994.

16 C. J. S., page 562:

> "In order that a statute may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals, or general welfare, that there is some clear, real, and substantial connection between the assumed purpose of the enactment and the actual provisions thereof, and that the latter do in some plain, appreciable, and appropriate manner tend toward the accomplishment of the object for which the power is exercised. The mere restriction of liberty or of property rights cannot of itself be denominated 'public welfare,' and treated as a legitimate object of the police power, unless the public welfare authorizes the enactment."

Our court has said in speaking of the proper exercise of police power in the case of *Jordan* v. *Gaines*, 136 Me. 291, at page 296:

> "Whether a particular statute has validity as a proper exercise of the police power depends on whether or not it 'extends only to such measures as are reasonable,' but then the police regulation 'must be reasonable under all circumstances. Too much significance cannot be given to the word 'reasonable' in considering the scope of the police power in a constitutional sense, for the test used to determine the constitutionality of the means employed by the legislature is to inquire whether the restrictions it imposes on rights secured to individuals by the Bill of Rights are unreasonable, and not whether it imposes any restrictions on such rights. . . . The validity of a police regulation therefore primarily depends on whether under all the existing circumstances the regulation is reasonable

or arbitrary and whether it is really designed to accomplish a purpose properly falling within the scope of the police power.' "

*State of Maine* v. *Old Tavern Farm, Inc.*, 133 Me. 468, at page 470:

"Police power, in its broadest acceptation, means the general power of a government to preserve and promote the public health, safety, morals, comfort or welfare, even at the expense of private rights."

and again on page 472:

"The guaranties and assurances of the Constitution of Maine, and of the Constitution of the United States, are positive, direct, unchanged and unrelaxed by circumstances.

'Subject, however, to the limitation that the real object of the statute must appear, upon inspection, to have a reasonable connection with the welfare of the public, the exercise of the police power by the legislature is well established as not in conflict with the Constitution.' People v. Havnor, 149 N. Y., 195."

The retail sale of gasoline per se is not a business so affected with the public interest that it warrants exercise of police power without evidence of particular evil. *Williams* v. *Standard Oil Co.*, 278 U. S. 235; *Levy, et al.* v. *City of Pontiac, et al., supra.*

In analyzing Sec. 200-A and reducing it to its simplest form, we find that no signs stating or relating to the price of motor fuel or any signs designed or calculated to cause the public to believe they state or relate to the price of motor fuel shall be posted or displayed on or about the premises where motor fuel is sold at retail except, however, that one or two signs of a limited size of 6 inches by 8 inches may be displayed on each pump or dispensing unit. Thus the retailer of motor fuel is restricted by law, first as to size of price signs and, second, as to *where* on his premises

he shall post and/or display the price signs of his motor fuel. Violation of this section is a criminal offense. There is no indication from the reading of the statute that it was enacted to prevent fraud and misrepresentation in the industry and when the yardstick of common sense is applied, it is found lacking in reasonableness. It has the quality of being arbitrary. We are conscious of the well recognized rule that a statute may operate as a valid police power and in its operation may incidentally affect the rights of a person guaranteed to him by both the State and Federal Constitutions. This may occur under circumstances where the police power is not unreasonable, is not arbitrary and has a substantial relationship to public health, public morals, or to any other phase of general welfare. These qualifications do not obtain in reference to the statute now being considered.

It has been demonstrated that the weight of authority has declared statutes and ordinances similar in terms to the one presently under our consideration as being unconstitutional. See 131 A. L. R. 1266.

We determine Chap. 420, Sec. 200-A of the P. L. of 1955 is not reasonably necessary for the accomplishment of any real or legitimate purpose in the exercise of the police power and that it is an unnecessary and oppressive restriction upon a lawful business.

We find Chap. 420, Sec. 200-A of P. L. of 1955 to be unconstitutional.

The complaints should be dismissed.

*So ordered.*