## OPINION OF THE JUSTICES
## OF THE SUPREME JUDICIAL COURT
## GIVEN UNDER THE PROVISIONS OF SECTION 3
## OF ARTICLE VI OF THE CONSTITUTION

\* \* \* \* \* \*

### QUESTIONS PROPOUNDED BY THE SENATE
### IN AN ORDER DATED JANUARY 13, 1958
### ANSWERED JANUARY 14, 1958

### SENATE ORDER PROPOUNDING QUESTIONS

ANSWER OF THE JUSTICES

*To the Honorable Senate of the State of Maine:*

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on January 13, 1958.

QUESTION (I): Do any of the provisions of Sections 1 and 2 of Legislative Document 1637 (An Act Relating to Educational Aid and to Clarify the Procedure of Reorganization of School Administrative Units) delegate legislative power to the State Board of Education and the School District Commission in violation of Section 1 of Part First of Article IV of the Constitution of Maine?

ANSWER: We answer in the negative.

The problem raised here is whether or not the Legislature has established adequate criteria which will control the exercise of a sound discretion by the State Board of Education or School District Commissions. We are satisfied that these sections of the proposed Act furnish such standards. We note no instance in which powers which can be properly

exercised only by the Legislature have been improperly delegated to any subordinate agency.

QUESTION (II): Must every city or town that is a participating municipality in a school administrative district, consisting of two or more municipalities to be created under the provisions of Section 2 of Legislative Document 1637, take into account its proportionate part of the indebtedness incurred by such district in computing the extent of its ability to create debt or liability under the provisions of amended Section 15 of Article IX of the Constitution of Maine?

ANSWER: We answer in the negative.

A School Administrative District organized under the proposed Act, a "body politic and corporate" (Sec. 111-F), is separate and distinct from the municipalities participating in its creation. It is a quasi-municipal corporation of the familiar pattern of school, water, recreational, and sewerage districts. The indebtedness of a School Administrative District thus is not the indebtedness of such municipalities. *Kelley* v. *School District*, 134 Me. 414; *Hamilton* v. *Portland Pier Dist.*, 120 Me. 15; *Kennebec Water Dist.* v. *Waterville*, 96 Me. 234.

QUESTION (III): Would a school administrative district, consisting of two or more municipalities to be created under the provisions of Section 2 of Legislative Document 1637, be subject in any manner to the provisions of amended Section 15 of Article IX of the Constitution of Maine limiting the amount of debt or liability that may be incurred by cities and towns?

ANSWER: We answer in the negative.

The Constitution reads in part, "No city or town shall hereafter create any debt or liability, which . . . shall ex-

ceed . . ." The limitation on municipal indebtedness applies to cities and towns and not to other entities, or, as here, a School Administrative District. Our Court has so held in the cases cited in our answer to QUESTION (II).

QUESTION (IV): Do the provisions of Section 2 of Legislative Document 1637 which allow two or more municipalities to join together to form a new municipality known as a School Administrative District, which district after its formation owns, operates, and controls all the public schools within the district, violate any of the provisions of Article VIII of the Constitution of Maine?

ANSWER: We answer in the negative.

The issue arises from the words in Article VIII of the Constitution, "A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to promote this important object, the legislature are authorized, and it shall be their duty to require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools; . . ."

In *Sawyer* v. *Gilmore*, 109 Me. 169, at p. 184, involving the constitutionality of the levy of a tax for the support of schools, our Court said with respect to Article VIII:

> "Who is to determine what is suitable? Clearly the Legislature itself. 'Suitable' is an elastic and varying term, dependent upon the necessities of changing times. What the Legislature might deem to be suitable and therefore necessary under some conditions, they might deem unnecessary under others."

In 1876, in an Opinion of the Justices, 68 Me. 582, approving the constitutionality not of a particular bill but in general of a school mill tax, the suitable provision Article was referred to, and the Justices pointed out that the Legis-

lature could do more. In brief, the Constitution marks the mandatory duty of the Legislature, but is not a prohibition upon its powers.

Municipalities providing for their public school system by the medium of School Administrative Districts will nevertheless thereby be making suitable provision for the support and maintenance of public schools, and by their proportional contributions to the expense incurred by such Districts will be in compliance with both the letter and spirit of the Constitution. The Legislature, by making provision therefor, will have satisfied the mandatory constitutional requirements imposed upon it.

QUESTION (V): Do any of the prohibitions against the passage of emergency legislation found in Section 16 of Part Third of Article IV of the Constitution of Maine, prevent the passage of Legislative Document 1637 as an emergency measure to become effective upon approval by the Governor?

ANSWER: We answer in the negative.

The Constitution reads, in part:

> "An emergency bill shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety; and shall not include (1) an infringement of the right of home rule for municipalities, (2) a franchise or a license to a corporation or an individual to extend longer than one year, or (3) provision for the sale or purchase or renting for more than five years of real estate."

The preamble to the Act sets forth that, ". . . it is essential that safe and adequate facilities for such administrative units be constructed without further delay;" Evidence of such facts would constitute a matter of public safety as a matter of law. Whether the facts so stated exist is for the Legislature, not for us to determine. *Morris* v. *Goss*, 147

Me. 89, 94. As for home rule, municipal plebiscites fulfill such requirements. The creation of a body politic and corporate is not the granting of a franchise or license within the meaning of the constitutional prohibition. The proposed Act contains no grant of any franchise or license but does no more than to provide mechanics by means of which municipalities may initiate voluntary action to form School Administrative Districts. Nor does the Act by its terms produce or compel a sale, purchase or renting of real estate within the intendment of the Constitution.

QUESTION (VI): Does Section 111-L of Legislative Document 1637 which provides for the financing of the operations of any School Administrative District to be created under this act violate Section 8 of Article IX of the Constitution of Maine?

ANSWER: We answer in the negative.

The Constitution reads, in part:

"All taxes upon real and personal estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof;"

The Act proposed observes the requirements of the Constitution for equal taxation by adopting the state valuation. *Sawyer* v. *Gilmore*, 109 Me. 169, 188.

Dated at Augusta, Maine, this 14th day of January, 1958.

Respectfully submitted:

s/  ROBERT B. WILLIAMSON
s/  DONALD W. WEBBER
s/  ALBERT BELIVEAU
s/  WALTER M. TAPLEY, JR.
s/  FRANCIS W. SULLIVAN
s/  F. HAROLD DUBORD