BRUCE MacGIBBON & another *vs.* BOARD OF APPEALS OF DUXBURY.

Plymouth.   May 7, 1964. — June 25, 1964.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Board of Appeals: decision; Special permit.

Where, in a town whose zoning by-law, for the purpose of preserving the town's natural resources, required a special permit from the board of appeals to excavate or fill any marsh, an application was made to the board of appeals for a permit "to fill and/or excavate" certain marsh lots "in order to comply with" requirements of the board of health, a decision of the board of appeals denying the application on the ground of health hazards which would result if the lots were "filled and used for residential purposes" was not responsive to the application; the decision of the board of appeals must be annulled and the board directed to determine the facts relevant to the application.

BILL IN EQUITY filed in the Superior Court on November 15, 1962.

The suit was heard by *Cahill, J.*

*Seymour Bluhm* for the plaintiffs.

*Robert J. Geogan,* Town Counsel, for the defendant, submitted a brief.

SPIEGEL, J.   This is a bill in equity under G. L. c. 40A, § 21, by way of an appeal from a decision of the board of appeals of the town of Duxbury (the town) denying the plaintiffs a permit (the permit) "to fill and/or excavate" certain shore lots.   The case is here on appeal from a decree of the Superior Court that the decision of the board did not exceed its authority and that no modification of its decision was required.

On March 12, 1960, the town adopted an amendment to its zoning by-law which stated: " [The by-law] is also for the purpose of protecting and preserving from despoliation the natural features and resources of the [t]own, such as salt marshes, wetlands, brooks, and ponds.   No obstruction

of streams, tidal rivers, and no excavation or filling of any marsh, wetlands, or bog shall be done without proper authorization by a special permit issued by the [b]oard of [a]ppeals." Pursuant to this amendment, on September 27, 1962, the plaintiffs applied for the permit, and in a decision dated November 9, 1962, the permit was refused. The decision states: "[The plaintiffs] have presented no evidence that . . . [their] land could, in fact, be filled and used for residential purposes without constituting a hazard to the health of the community. The marsh . . . [on which the plaintiffs' lots are located] is below the water level at high water . . . . As Duxbury has no system of sanitary sewage disposal, in the opinion of the [b]oard this land is not suitable for installation of a cesspool or septic tank because little or no drainage will be provided for a leaching field. An inadequate leaching field will cause a direct health menace, not only to the occupants of the land in question, but to the entire surrounding residential area."

The petition to the board was for a permit "[t]o fill and/or excavate any and all portions of the . . . [plaintiffs'] lots in order to comply with the minimum requirements of the Board of Health of the Town of Duxbury in regard to height of land above mean high water level and drainage regulations as prerequisite to said Board's approval of the sites necessary for the issuance of Building Permits." This was not a petition for a building permit, which presumably would have to be requested initially from the building inspector pursuant to the town's building code.[1] See *Caputo* v. *Board of Appeals of Somerville,* 330 Mass. 107, 110. Nevertheless, the reasons for the denial of the permit given in the board's decision seem relevant pri-

---

[1] The plaintiffs' petition leaves no doubt that they intend to seek a building permit after the land is filled, but whether a building permit should be granted was not before the board. See art. IX, § 1, of the Building Code of Duxbury (in evidence as an exhibit) which reads: "Before erecting, altering, moving, razing, adding to, or making any changes in use or type of occupancy of any building or structure, the Owner or his agent shall file an application for a permit with the Building Inspector. No work shall begin until a permit is granted and until the Rules and Regulations of the Planning Board and the Board of Health have been complied with and only when there is no violation of the Zoning By-Laws."

marily to the health hazards that would result if the land should be "filled *and used for residential purposes*" (emphasis supplied). In so far as the permit is sought for the purpose of filling and excavating land, it ought not to be denied on the basis that the land is unsuitable for residential construction or for the installation of cesspools and septic tanks. The board's action must be responsive to the plaintiffs' petition and its decision must contain "definite statement of rational causes and motives, founded upon adequate findings." *Prusik* v. *Board of Appeal of Boston,* 262 Mass. 451, 458. See *Bradley* v. *Zoning Adjustment Bd. of Boston,* 255 Mass. 160, 173–174.

The board states in its brief: "If promiscuous changes in the surface of the earth are permitted, the attendant risks to the public health and safety are obvious. If areas of land which are now, and have been since the era of the last glacier, natural basins to collect and hold surface water and flood tides are to be changed without careful engineering studies, there could and in all probability would as a result be a transfer of the water which was formerly retained into or onto other areas." These are essentially contentions of fact which, if adequately verified and found applicable to the plaintiffs' petition, may provide a reasonable basis for the denial of the permit. Other considerations affecting the public welfare may be relevant. However, before we can pass on the validity of the board's action, the facts relevant to the denial of the plaintiffs' petition *to excavate and fill* must be stated. "[These] we cannot determine on this record. In order to do justice further facts should be found." *Caputo* v. *Board of Appeals of Somerville,* 330 Mass. 107, 113.

The final decree is reversed; a new decree is to be entered (a) annulling the decision of the board; and (b) directing the board to hold such further proceedings as may be necessary consistent with this opinion.

*So ordered.*