**STATE of Maine**

v.

**R. B. JOHNSON and Mabel F. Johnson.**

Supreme Judicial Court of Maine.

May 21, 1970.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, for the State.

Clinton B. Townsend, Skowhegan, amicus curiae.

Robert W. Ferguson, Springvale, James R. Flaker, Portland, for defendants.

Before WILLIAMSON, C. J., and MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

MARDEN, Justice.

On appeal from an injunction granted under the provisions of 12 M.R.S.A. §§ 4701–4709, inclusive, the Wetlands Act (Act),[1] originating in Chapter 348 P.L.

---

1. Pertinent portions are quoted.

"§ 4701. Procedure; hearing

"No person, agency or municipality shall remove, fill, dredge or drain sanitary sewage into, or otherwise alter any coastal wetland, as defined herein, without filing written notice of his intention to do so, including such plans as may be necessary to describe the proposed activity, with the municipal officers in the municipality affected and with the Wetlands Control Board. Such notice shall be sent to each body by registered mail at least 60 days before such alteration is proposed to commence. The municipal officers shall hold a public hearing on the proposal within 30 days of receipt of the notice and shall notify by mail the person proposing the alteration and the public by publication in a newspaper published in the county where the wetlands are located, the Wetlands Control Board and all abutting owners of the hearing.

"For purposes of this chapter, coastal wetland is defined as any swamp, marsh, bog, beach, flat or other contiguous lowland above extreme low water which is subject to tidal action or normal storm flowage at any time excepting periods of maximum storm activity."

\* \* \* \* \*

"§ 4702. Permits

"Permit to undertake the proposed alteration shall be issued by the municipal officers within 7 days of such hearing providing the Wetlands Control Board approves. Such permit may be conditioned upon the applicant amending his proposal to take whatever measures are deemed necessary by either the municipality or the Wetlands Control Board to

1967, which places restrictions upon the alteration and use of wetlands, as therein defined, without permission from the municipal officers concerned and the State Wetlands Control Board (Board). The Act is a conservation measure under the police power of the State to protect the ecology of areas bordering coastal waters. The 1967 Act has been amended in no way pertinent to the present issue except by Section 8 of Chapter 379 of the Public Laws of 1969, which authorized alternatively a mandatory injunction for the restoration of any wetlands previously altered in violation of the Act.

The appellants own a tract of land about 220 feet wide and 700 feet long extending across salt water marshes between Atlantic Avenue on the east and the Webhannet River on the west in the Town of Wells. Westerly of the lots fronting on Atlantic Avenue the strip has been subdivided into lots for sale. The easterly 260 feet approximately of the strip has been filled and bears seasonal dwellings. Westerly of this 260 foot development is marsh-land flooded at high tide and drained, upon receding tide, into the River by a network of what our Maine historical novelist Kenneth E. Roberts called "eel runs," but referred to in the record as creeks. Similar marsh-land, undeveloped, lies to the north and south of appellants' strip, and westerly of the River, all of which makes up a substantial acreage (the extent not given in testimony, but of which we take judicial notice) of marsh-land known as the Wells Marshes. Appellants' land, by raising the grade above high water by the addition of fill, is adaptable to development for building purposes.

Following the effective date of the Act, an application to the municipal officers, with notice to the Wetlands Control Board, for permission to fill a portion of this land was denied by the Board, an administrative appeal was taken and the case reported to this Court, which appears sub nom. Johnson v. Maine Wetlands Control Board, Me., 250 A.2d 825 (Case No. 1) and in which the constitutionality of the Act was challenged. We held, by decision filed March 11, 1969 that absent a record of evidence as to the nature of the land involved and the benefits or harm to be expected from the denial of the permit, the case would have to be remanded.

Subsequent to March 11, 1969 fill was deposited on the land in question, as the result of which the State sought an injunction, the granting of which brings this case before us on appeal (Case No. 2). It is stipulated that the evidence in this case should be accepted as the evidence lacking in (Case No. 1) and that the two cases be consolidated for final determination of both.

The record establishes that the land which the appellants propose to build up by fill and build upon for sale, or to be offered for sale to be built upon, are coastal wet-

protect the public interest. Approval may be withheld by either the municipal officers or the board when in the opinion of either body the proposal would threaten the public safety, health or welfare, would adversely affect the value or enjoyment of the property of abutting owners, or would be damaging to the conservation of public or private water supplies or of wildlife or freshwater, estuarine or marine fisheries."
    \*     \*     \*     \*     \*
"§ 4704. Appeal
"Appeal may be taken to the Superior Court within 30 days after the denial of a permit or the issuance of a conditional permit for the purpose of determining whether the action appealed from so restricts the use of the property as to de-prive the owner of the reasonable use thereof, and is therefore an unreasonable exercise of police power, or which constitutes the equivalent of a taking without compensation. The court upon such a finding may set aside the action appealed from."
"§ 4705. Wetlands Control Board
"The Wetlands Control Board shall be composed of the Commissioners of Sea and Shore Fisheries and of Inland Fisheries and Game, the Chairman of the Water and Air Environmental Improvement Commission, the Chairman of the State Highway Commission, the Forest Commissioner and the Commissioner of Health and Welfare or their delegates."
§ 4709. Violators are subject to fine or injunctive process.

lands within the definition of the Act and that the refusal by the Board to permit the deposit of such fill prevents the development as proposed. The single Justice found that the property is a portion of a salt marsh area, a valuable natural resource of the State, that the highest and best use for the land, so filled, is for housing, and that unfilled it has no commercial value.

The issue is the same in both, namely, whether the denial of permit (Case No. 1) and the injunction (Case No. 2) so limit the use to plaintiffs of their land that such deprivation of use amounts to a taking of their property without constitutional due process and just compensation.[2]

### Due Process

Due process of law has a dual aspect, procedural and substantive. 16 Am.Jur.2d, Constitutional Law § 548.

Procedurally, "notice and opportunity for hearing are of the essence" Randall v. Patch, 118 Me. 303, 305, 108 A. 97, 98, and as attributed to Daniel Webster in the Dartmouth College case it is "a law which hears before it condemns, which proceeds upon inquiry; and renders judgment only after trial." Trustees of Dartmouth College v. Woodward, 4 Wheat (U.S.) 518, 4 L.Ed. 629, and see York Harbor Village Corporation v. Libby, 126 Me. 537, 539, 140 A. 382.

The guaranty of procedural due process requires no particular form of procedure. 16 Am.Jur. Constitutional Law § 549, and Green v. State, Me., 247 A.2d 117, [9] 121. The Act meets all requirements of procedural due process.

Substantively, "the terms 'law of the land' and 'due process of law' * * * are identical in meaning." Michaud v. City of Bangor, 159 Me. 491, 493, 196 A.2d 106, 108.

It is "the constitutional guaranty that no person shall be deprived of * * * *

property for arbitrary reasons, such a deprivation being constitutionally supportable only if the conduct from which the deprivation flows is proscribed by reasonable legislation (that is, legislation the enactment of which is within the scope of legislative authority) reasonably applied (that is, for a purpose consonant with the purpose of the legislation itself)." 16 Am.Jur.2d, Constitutional Law § 550.

It is this substantive due process which is challenged in the Act. In this connection it must be noted that § 4704 (Footnote 1) by its terms equates a deprivation "of the reasonable use" of an owner's property with "an unreasonable exercise of police power."

The constitutional aspect of the current problem is to be determined by consideration of the extent to which appellants are deprived of their usual incidents of ownership,—for the conduct of the public authorities with relation to appellants' land is not a "taking" in the traditional sense. Our State has applied a strict construction of the constitutional provisions as to land. See Opinion of the Justices, 103 Me. 506, 511, 69 A. 627, and State v. McKinnon, 153 Me. 15, 20, 133 A.2d 885.

We find no constitutional definition of the word "deprive," Munn v. Illinois, 94 U.S. 113, 123, 24 L.Ed. 77, since the constitutionally protected right of property is not unlimited. It is subject to reasonable restraints and regulations in the public interest by means of the legitimate exercise of police power. 16 Am.Jur.2d, Constitutional Law § 363. The exercise of this police power may properly regulate the use of property and if the owner suffers injury "it is either damnum absque injuria, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended * * * to secure." State v. Robb, 100 Me. 180, 186,

---

2. Maine Constitution Article I § 6. "He shall not be * * * deprived of his * * * property * * * but by * * * the law of the land."

"Section 21. Private property shall not be taken for public uses without just compensation, * * *."

60 A. 874, 876. The determination of unconstitutional deprivation is difficult and judicial decisions are diverse. Broadly speaking, deprivation of property contrary to constitutional guaranty occurs "if it deprives an owner of one of its essential attributes, destroys its value, restricts or interrupts its common necessary, or profitable use, hampers the owner in the application of it to the purposes of trade, or imposes conditions upon the right to hold or use it and thereby seriously impairs its value." 16 Am.Jur.2d Constitutional Law § 367. See also State v. Union Oil Company, 151 Me. 438, 446, 120 A.2d 708.

Conditions so burdensome may be imposed that they are equivalent to an outright taking, although the title to the property and some vestiges of its uses remain in the owner. East Coast Lumber Terminal, Inc. v. Town of Babylon, 174 F.2d 106, [5–7] 110 (2 CCA, 1949).

A guiding principle appears in the frequently cited case of Pennsylvania Coal Company v. Mahon et al., 260 U.S. 393, 413, 43 S.Ct. 158, 159–160, 67 L.Ed. 322 (1922) where Mr. Justice Holmes declared:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts."

\*     \*     \*     \*     \*     \*

"We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than

the constitutional way of paying for the change. As we already have said this is a question of degree—and therefore cannot be disposed of by general propositions." At page 416.

See also Pumpelly v. Green Bay Company, 13 Wall. (U.S.) 166, 177–178, 20 L.Ed. 557 (1871).

Confrontation between public interests and private interests is common in the application of zoning laws, with which the Wetlands Act may be analogized, and the great majority of which, upon their facts, are held to be reasonable exercise of the police power. There are, however, zoning restrictions which have been recognized as equivalent to a taking of the property restricted. See Frankel v. City of Baltimore, 223 Md. 97, 162 A.2d 447, [2] 451 (1960); City of Plainfield v. Borough of Middlesex, 69 N.J.Super. 136, 173 A.2d 785, 788 (1961), and Arverne Bay Const. Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, [10–13] 591 (N.Y.1938).

The same result has been reached as to zoning laws which identify their purposes as ones of conservation. See Dooley v. Town Plan and Zoning Commission of Town of Fairfield, 151 Conn. 304, 197 A.2d 770, [5, 6] 773 (1964, flood control); and Morris County Land Improvement Company v. Township of Parsippany-Troy Hills et al., 40 N.J. 539, 193 A.2d 232, [6, 7] 241 (1963, swampland preservation), and the rationale expressed in Commissioner of Natural Resources et al. v. S. Volpe & Co., Inc., 349 Mass. 104, 206 N.E.2d 666 (1965, involving "dredge and fill" Act); and MacGibbon et al. v. Board of Appeals of Duxbury, 347 Mass. 690, 200 N.E.2d 254 (1964) and 255 N.E.2d 347 (Mass.1970).

There has, as well, been restrictive conservation legislation which has been held not equivalent to taking. See Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, [1–3] 89 (1938, oil and gas "well spacing" Act); Iowa Natural Resources Council v. Van Zee, 158 N.W.2d 111, [10], [11] 117 (Iowa 1968, flood control Act),

and Swisher v. Brown, 157 Colo. 378, 402 P.2d 621 (1965, marketing control Act). See also Greenleaf-Johnson Lumber Company v. Garrison, 237 U.S. 251, 260, 35 S.Ct. 551, 59 L.Ed. 939 (1914, directing removal of docks in navigable waters, with dissent), and Miami Beach Jockey Club, Inc. v. Dern, 66 App.D.C. 254, 86 F.2d 135 (1936, legislative prohibition of filling submerged land).

Of the above, the Massachusetts cases are of particular significance inasmuch as the "dredge and fill" Act discussed in *Volpe* is expressed in terms closely parallel to our Wetlands Act and the zoning ordinance in *MacGibbon* deals with facts closely akin to those before us.

Between the public interest in braking and eventually stopping the insidious despoliation of our natural resources which have for so long been taken for granted, on the one hand, and the protection of appellants' property rights on the other, the issue is cast.

Here the single Justice has found that the area of which appellants' land is a part "is a valuable natural resource of the State of Maine and plays an important role in the conservation and development of aquatic and marine life, game birds and waterfowl," which bespeaks the public interest involved and the protection of which is sought by Section 4702 of the Act. With relation to appellants' interest the single Justice found that appellants' land absent the addition of fill "has no commercial value whatever." These findings are supported by the evidence and are conclusive. Danby v. Hanscom, 156 Me. 189, 191, 163 A.2d 372.

As distinguished from conventional zoning for town protection, the area of Wetlands representing a "valuable natural resource of the State," of which appellants' holdings are but a minute part, is of state-wide concern. The benefits from its preservation extend beyond town limits and are state-wide. The cost of its preservation should be publicly borne. To leave appellants with commercially valueless land in upholding the restriction presently imposed, is to charge them with more than their just share of the cost of this state-wide conservation program, granting fully its commendable purpose. In the phrasing of *Robb, supra,* their compensation by sharing in the benefits which this restriction is intended to secure is so disproportionate to their deprivation of reasonable use that such exercise of the State's police power is unreasonable.

■ The application of the Wetlands restriction in the terms of the denial of appellants' proposal to fill, and enjoining them from so doing deprives them of the reasonable use of their property and within Section 4704 is both an unreasonable exercise of police power and equivalent to taking within constitutional considerations.

■ While we have turned the case upon the uncompensated "taking" issue, appellants have urged also that the standards by which the land owner's proposal must be measured are unconstitutionally vague. We do not agree. The Constitution requires no more than "an adequate warning as to what conduct falls under its ban," and demarcation of "boundaries sufficiently distinct" for the Courts to administer the law in accordance with the legislative will. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, [4–7] 1542, 91 L.Ed. 1877. See also 50 Am.Jur., Statutes § 473; Swed et al. v. Inhabitants of Town of Bar Harbor, 158 Me. 220, 226, 182 A.2d 664, and State v. Fantastic Fair et al., 158 Me. 450, 468, 186 A.2d 352. The standards herein fixed are markedly more explicit than those found wanting in Waterville Hotel Corp. v. Board of Zoning Appeals, Me., 241 A.2d 50, and those found adequate in *MacGibbon, supra,* 255 N.E.2d [3–6] at page 350. Constitutional standards are met.

■ Holding, as we do, that the prohibition against the filling of appellants' land, upon the facts peculiar to the case, is an unreasonable exercise of police power,

it does not follow that the restriction as to draining sanitary sewage into coastal wetland is subject to the same infirmity. Additional considerations of health and pollution which are "separable from and independent of" the "fill" restriction may well support validity of the Act in those areas of concern. See Hamilton et als. v. Portland Pier Site District et als., 120 Me. 15, 24, 112 A. 836, and La Fleur ex rel. Anderson v. Frost et als., 146 Me. 270, 289, 80 A. 2d 407.

Within the provisions of Section 4704, the denial of the permit to fill (Case No. 1) and the injunction (Case No. 2) are "set aside."

Appeal sustained in both cases.

WEBBER, J., did not sit.