**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Questions Propounded by the Senate in an Order Dated March 20, 1969.

Supreme Judicial Court of Maine.

April 7, 1969.

**310**

————◆————

SENATE ORDER PROPOUNDING
QUESTIONS

State of Maine

Senate Chamber

104th Legislature

In Senate

March 20, 1969

Whereas, it appears to the Senate of the 104th Legislature that the following are important questions of law, and that the occasion is a solemn one; and

Whereas, in many areas of our State, problems are constantly arising with regard to furnishing our citizens with pure water and proper fire protection, and taking immediate but appropriate steps to carry out and implement the State's Existing pollution abatement program, all of which affect the public health and safety of the inhabitants of the various areas and requires immediate legislative action; and

Whereas, there is pending before the 104th Legislature a number of Bills, which will be hereinafter referred to, which deal either with the purity of water, fire protection or the creation or expansion of entities to handle and finance the implementation of said abatement program at the local level, or both, which the Legislature considers to be of an emergency nature since each Bill contains an emergency preamble; and

Whereas, the power of the Legislature to pass said Bills as emergency measures, in view of certain constitutional restrictions upon the power of the Legislature to pass emergency legislation, has been questioned; and

Whereas, it is important that the Legislature be informed as to the answers to the important and serious legal questions hereinafter raised:

Now, Therefore, Be it Ordered, that the Justices of the Supreme Judicial Court are hereby respectfully requested to give to the Senate, according to the provisions of the Constitution on its behalf, their opinion upon the following questions, to wit:

I

FACTS L.D. #919, AN ACT to Expand the Purposes of the Portland Water District to Authorize it to Engage in Treatment and Disposal of Sewage, (EMERGENCY) is pending before the 104th Legislature. (Exhibit A hereof). The Act provides that the Portland Water District shall, upon the acceptance of the Act by cer-

tain municipalities named therein, be required to perform the governmental function of assisting the accepting municipalities in the treatment and disposal of sewage. The Portland Water District was incorporated by Chapter 433 of the Private & Special Laws of Maine 1907, and is presently engaged in the supplying of water to the several cities and towns named in L.D. #919, as a governmental function, and said District is not presently authorized to provide any sewer services. The governmental duty with regard to sewage disposal to be granted to the Portland Water District, upon its acceptance, is to run in perpetuity unless and until revoked by subsequent legislative action.

QUESTION Do any of the limitations, against the passage of an Emergency Bill, contained in Article IV, Part Third, Section 16, of the Constitution of Maine, prohibit the passage of L.D. #919, AN ACT to Expand the Purposes of the Portland Water District to Authorize it to Engage in Treatment and Disposal of Sewage, as an emergency measure?

## II

FACTS Legislative Document #706, AN ACT Increasing Borrowing Capacity of Waldoboro Sewer District (EMERGENCY) is pending before the 104th Legislature. (Exhibit B hereof) The Act provides for certain changes in the Charter of said District, the most important of which is the increase of the indebtedness that the District may create from $250,000 to $600,000, to finance the pollution abatement program described in the Emergency Preamble of said Bill. The District was created by Chapter 146 of the Private & Special Laws of Maine 1963 and duly accepted by the inhabitants. The District is coterminus with the Town of Waldoboro, and is presently engaged in sewage collection and treatment in a part of the Town of Waldoboro, as a governmental function. The District's Charter contains no time

limits upon its existence. L.D. #706 does not contain any provision for a referendum by the inhabitants of the District before said Act shall become effective.

QUESTION-A Does the limitation upon the Legislature's power to pass an emergency measure, as follows: "and shall not include an infringement of the right of home rule for municipalities," found in Article IV, Part Third, Section 16 of the Constitution of Maine, prohibit the passage of L. D. #706, AN ACT Increasing Borrowing Capacity of Waldoboro Sewer District, as an emergency measure?

QUESTION-B If the answer to Question A is in the affirmative, will the constitutional deficiency be cured if the Legislature requires a vote of the inhabitants of the Waldoboro Sewer District before L. D. #706 shall become effective as law?

## III

FACTS Legislative Document #1109, AN ACT to Create the Harrison Water District (EMERGENCY) is pending before the 104th Legislature. (Exhibit C hereof). This Act creates a governmental body and assigns to that body the governmental function of serving the area described therein with water service. The Act will only become effective upon approval of the inhabitants of the District and upon the further condition that the existing facilities of a local water company shall be acquired by purchase or condemnation. The District is to continue indefinitely for the purpose of carrying out its governmental function, assuming the above two conditions are met.

QUESTION Does the limitation upon the Legislature's power to pass an emergency measure, as follows: "and shall not include a franchise or license to a corporation or an individual to extend longer than one year" found in Article IV of Part Third, Section 16 of the Constitution of Maine,

prohibit the passage of L.D. #1109, AN ACT to Create the Harrison Water District, as an emergency measure?

### IV

FACTS Legislative Document #103, AN ACT to Amend the Charter of the Fryeburg Water Company by Granting Certain Additional Powers and Ratifying and Confirming Certain Acts of said Corporation, (EMERGENCY) is pending before the 104th Legislature. (Exhibit D hereof). This Act provides for the removal of certain limitations on the Company's right to hold real and personal estate; for the removal of certain other restrictions with regard to the amount of its capital stock and grants the right to issue bonds. The Fryeburg Water Company was created by Special Act of the Legislature in 1883. Its charter was granted prior to the time that the Maine Public Utilities Commission was created to control and supervise water utilities. The Company's Charter also antedates the provision for the so-called Initiative and Referendum found in the Constitution of Maine, namely, Article IV, Part Third, Section 16 through 22, which became effective on January 6, 1909. The purpose of the Act is to allow the Company to more properly carry out its franchise function of providing water service to the Town of Fryeburg and vicinity. The Fryeburg Water Company has been in existence since 1883 and there is no limitation upon the continuance of its Charter.

QUESTION Do any of the limitations, against the passage of an emergency measure, contained in Article IV, Part Third, Section 16, of the Constitution of Maine, prohibit the passage of L.D. #103, AN ACT to Amend the Charter of the Fryeburg Water Company by Granting Certain Additional Powers and Ratifying and Confirming Certain Acts of said Corporation, as an emergency measure?

### V

FACTS Legislative Document #919, AN ACT to Expand the Purposes of the Portland Water District to Authorize it to Engage in Treatment and Disposal of Sewage (EMERGENCY) is pending before the 104th Legislature. (Exhibit A hereof). (See Statement of Facts under I supra.) In addition, the 102nd Legislature passed Chapter 310 of the Public Laws of 1965, AN ACT Providing for the Formation of Sanitary Districts, which is now Chapter 11 of Title 38 of the Revised Statutes. The cities and towns named in L.D. #919 could, subject to certain approvals and ratifications, form a sanitary district pursuant to said Title 38. Certain cities and towns, named in L.D. #919, do not wish to do so, but wish to ask the Legislature to expand the authority of the Portland Water District which is presently serving the cities and towns named therein on a regional basis, to expand its authority to assist the cities and towns in handling their pollution abatement problems.

Article IV, Part Third, Sections 13 and 14, of the Constitution of Maine, read as follows:

> Sec. 13—"The Legislature shall, from time to time, provide, as far as practicable, by general laws, for all matters usually appertaining to special or private legislation."

> Sec. 14—"Corporations shall be formed under the general laws, and shall not be created by Special Act of the Legislature, except for municipal purposes, and in cases where the objects of the corporation cannot otherwise be obtained; and however formed, they shall forever be subject to the general laws of this State."

QUESTION In view of the provisions of the Maine Sanitary District Enabling Act, 38 M.R.S.A. Chapter 11, a general law authorizing the formation of sanitary districts by two or more municipalities under certain terms and conditions, is it within the power of the Legislature to expand by special act of the Legislature the authority of the Portland Water District, a quasi-municipal corporation, to perform certain

governmental functions, namely, the function of assisting certain municipalities in the treatment and disposal of sewage?

EXHIBIT A

(EMERGENCY)

ONE HUNDRED AND FOURTH LEGISLATURE

*Legislative Document*　　　　　*No. 919*

H.P. 705　　House of Representatives, February 19, 1969

Referred to Committee on Public Utilities. Sent up for concurrence and 1,000 ordered printed.

BERTHA W. JOHNSON, Clerk

Presented by Mr. D'Alfonso of Portland.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN HUNDRED SIXTY-NINE

AN ACT to Expand the Purposes of the Portland Water District to Authorize it to Engage in Treatment and Disposal of Sewage.

*Emergency preamble.* Whereas, acts and resolves do not become effective until ninety days after the Legislature adjourns unless passed as emergency measures; and

Whereas, the present sewage facilities are inadequate to serve the needs of the greater Portland area and a new and adequate sewage treatment and disposal service must be immediately constructed; and

Whereas, an adequate sewage treatment and disposal system is essential to the health and welfare of the inhabitants of the Cities of Portland, South Portland and Westbrook, and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham; and

Whereas, it is imperative that action be taken at the earliest possible time to eliminate existing pollution and to prevent further pollution caused by the present inadequate sewage disposal facilities and to accomplish the necessary regional planning to meet the pollution abatement schedule for the region as established by the State of Maine and the Federal Government; and

Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

*Sec. 1.　Portland Water District authorized to engage in waste water and sewage service.* The Portland Water District, a quasi-municipal corporation organized and existing pursuant to chapter 433 of the private and special laws of the State of Maine of 1907, as amended, is authorized to acquire, construct, maintain, control, operate, manage and provide facilities for the handling on a regional basis of waste water and sewage consisting of domestic, commercial, municipal and industrial wastes and storm or surface waters, collected by such of the municipalities of the Cities of Portland, South Portland and Westbrook, and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham as from time to time approve this Act in accordance with section 17 hereof, hereinafter referred to as the "participating municipalities"; all for the purpose of providing treatment facilities, interceptor lines and pumping stations for the transmission and disposal of waste water and sewage received from municipal collection systems.

The authorization to service the participating municipalities herein granted shall be exclusive except for the waste water and sewage facilities constructed within any participating municipality prior to the adoption of a regional plan by the trustees of the district, and except for any waste water and sewage facilities to be constructed within any participating municipality

for which proposed construction plans have been approved by the appropriate governmental agencies, bids have been invited, construction contracts have been awarded, or municipal financing of such construction has been finally authorized by such participating municipality, all prior to such adoption of the regional plan.

It shall be the duty of the district to receive the waste water and sewage from the local collection systems of the participating municipalities at such point or points as the district and the participating municipality shall agree, and it shall remain the duty of each participating municipality to perform the initial collection of waste water and sewage within such participating municipality and to deliver it to the district at the agreed point or points. As used in this Act the term "waste water and sewage system" refers to the waste water and sewage system authorized under the terms of this Act.

In addition to the operation of the waste water and sewage system, the district is also authorized to contract with persons, firms and corporation, other than municipalities located within the Cities of Portland, South Portland and Westbrook, and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham, upon such terms as may be agreed to manage, operate, construct and maintain waste water and sewage collection and treatment systems, although the city or town where the person, firm or corporation is located has not accepted the provisions of this Act.

*Sec. 2. Power of Portland Water District.* In addition to its existing powers, the district is authorized to take, receive, hold, transmit, treat, purify, discharge and dispose of all said waste water and sewage collected by the participating municipalities, all in furtherance of the health, welfare, comfort and convenience of the inhabitants of the participating municipalities, and to provide a method of combating water pollution within the participating municipali-

ties. All incidental powers, rights and privileges necessary to the accomplishment of the objects herein set forth are granted to the district.

*Sec. 3. Authority to construct and maintain.* The district is authorized to lay in, along, under and through the streets, roads, ways and highways and tidal waters, lakes, ponds, rivers and water courses in the Cities of Portland, South Portland and Westbrook, and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham, and across private lands therein, and to maintain, repair and replace all such pipes, lines, drains, conduits, interceptor lines, trunk sewers, outfalls, outlets, and fixtures and appurtenances and to construct, operate, maintain and replace such disposal, treatment and purification facilities and appurtenances, as may be necessary and convenient for the district in carrying out the foregoing powers.

The district is declared to be a public service corporation as the term is used in the Revised Statutes, Title 30, section 4953, subsection 6.

*Sec. 4. Excavation and repair work, property to be left in good condition.* Whenever the district shall enter, dig up or excavate any street, way or highway, or other land, within the Cities of Portland, South Portland and Westbrook, and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham, for sewer purposes, it shall cause the same to be done with as little obstruction as possible to the public travel, and shall at its own expense, without unnecessary delay, cause the earth and pavement removed by it to be replaced in proper condition to the satisfaction of the municipal officers of such municipality.

*Sec. 5. Authority to acquire and hold property; eminent domain.* The district is authorized and empowered to acquire and hold real and personal property neces-

sary or convenient for the purposes of this Act.

The district is authorized and empowered to exercise the right of eminent domain in the Cities of Portland, South Portland and Westbrook, and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham as hereinafter provided, to acquire and hold for such purposes either by purchase or exercise of its right of eminent domain any land, real estate, easements or interest therein or water rights or interests therein for the purposes of any sewers, trunk sewers, drains, reservoirs, interceptor lines, pumping stations, treatment and disposal facilities, outfalls and all such other equipment, appliances, appurtenances and property used or useful for the transmission, holding, treatment, purification, discharge and disposition of all waste water and sewage.

In exercising its rights of eminent domain, the district shall follow the procedures established in said chapter 33 of private and special laws of Maine of 1907, as amended. Nothing herein contained shall be construed as authorizing the district to take by right of eminent domain any of the property or facilities of any municipal or quasi-municipal corporation used or acquired for future use by the owner thereof in the performance of a public duty, unless expressly authorized by special Act of the Legislature.

*Sec. 6. Crossing a public utility.* In case of a crossing of any land or interest in land owned by a company operating any public utility, unless written consent is given by such company as to place, manner and conditions of the crossing within 30 days after such consent is requested in writing by the district, the Public Utilities Commission upon petition by the district shall determine the place, manner and conditions of such crossing, and all work on the property of such company shall be done under the supervision and to the satisfaction of such company, or as prescribed by the Public Utilities Commission, but at the expense of the district.

*Sec. 7. Authorized to acquire property of municipality devoted to sewage system.*

The district is authorized to acquire by negotiation all or part of the existing waste water and sewage facilities including but not limited to, pumping stations, treatment plants, interceptor lines, trunk sewers and outfalls located within the participating municipalities which are appropriate to the waste water and sewage purposes of the district; and the consideration to be paid shall be agreed upon by the district and such participating municipality acting by and through its municipal officers, without vote of its inhabitants. The consideration shall include the assumption or payment of any outstanding indebtedness incurred by such participating municipality in connection with the property acquired.

The participating municipalities acting by and through their respective municipal officers, without the vote of their inhabitants, are authorized to transfer and convey to the district any property necessary, convenient or useful in furtherance of the waste water and sewage purposes of the district.

*Sec. 8. Authorized to borrow money, to issue bonds and notes for waste water and sewage purposes.* The district, through its trustees and without vote of its inhabitants, is authorized to issue from time to time bonds or notes of the district to pay for the costs of capital outlay incurred by the district in connection with accomplishing its waste water and sewage purposes, including any necessary expenses and liabilities in acquiring properties, renovating properties, laying pipes, conduits, drains, interceptor lines, trunk sewers, construction of treatment plants, laboratories and other waste water and sewage facilities; making renewals, additions, extensions and improvements to the same; and for the establishment of a reasonable reserve for future payments of debt service which reserve

shall not exceed for any issue of bonds or notes, the amount of interest and principal payable on account of such issue averaged for each year except the last in which principal of such issue is payable, and for the interest during the period of construction and for a period not exceeding one year thereafter. Said sewer bonds or notes shall be issued in such amount or amounts as the district, acting through its trustees and without vote of its inhabitants, may determine; and the district may refund any such sewer bonds or notes. Said sewer bonds or notes shall be issued to mature serially, in annual installments, the first of which shall be payable not later than 5 years from the date of such sewer bonds or notes and the last of which shall be payable not later than 40 years from said date, as the trustees shall determine; or may be issued for a term of years not exceeding 40 years; or in a combination to mature serially and for a term of years not exceeding 40 years, all as the trustees shall determine. Said sewer bonds may be callable with or without premium. Said sewer bonds or notes shall contain such terms and conditions, bear such rate or rates of interest, be sold in such manner, at public or private sale, at par, at a discount or at a premium, all as the trustees shall determine.

If the trustees vote to issue sewer bonds or notes, the trustees may authorize the issuance, in the name of the district, of temporary notes for a period of not more than 3 years in anticipation of the money to be received from the sale of such sewer bonds or notes. The time within which such temporary notes shall be payable need not be included in determining the period for which sewer bonds or notes may be issued.

For the purpose of paying expenses of operation, including, without limitation, any principal or interest due or about to become due on any sewer bond or note issued by the district for which funds are not available, the district, through its trustees and without vote of its inhabitants, is authorized to issue from time to time temporary notes of the district in anticipation of assessments levied or to be levied against the participating municipalities.

Temporary notes in anticipation of assessments shall be payable not more than one year from their date and shall not exceed in principal amount at any one time outstanding the amount of the assessment in anticipation of which they are issued or in the event such assessments have not been levied, the estimated amount of such assessments as determined by the trustees.

Temporary notes issued under this section for a shorter period than the maximum permitted may be renewed by the issue of other temporary notes maturing within the required period; provided that the period from the date of issue of the original temporary note to the date of maturity of the renewal note shall not exceed the maximum period for which the original temporary note may have been issued. Such temporary notes or renewal notes may be sold at discount or with interest payable at, or on and before maturity.

The district may refund and reissue from time to time in one or in separate series its sewer bonds or notes. All sewer bonds, notes or other evidences of indebtedness shall have inscribed upon their face "Portland Water District" and "Sewer Bond" and shall be executed as the board of trustees shall determine.

All such sewer bonds, notes and evidences of indebtedness so issued by the district shall be legal obligations of the district, which is declared to be a quasi-municipal corporation within the meaning of the Revised Statutes, Title 30, section 5053, and all provisions of said section shall be applicable thereto.

All sewer bonds, notes and evidences of indebtedness issued by said district pursuant to this Act shall be legal investments for savings banks in the State of Maine, and shall be tax exempt.

Unless and until such time as a governmental agency of the State of Maine shall be given general jurisdiction to oversee the

borrowing activities of sewer district, the district is authorized to issue its sewer bonds, notes and evidences of indebtedness pursuant to this Act without the approval of any governmental agency.

*Sec. 9. Governmental grants and loans.* The district is authorized to enter into agreements with federal, state and local governments or any agency thereof, or any corporation, commission or board authorized by federal, state or local governments to grant or loan money to or otherwise assist in the financing of projects for accomplishing said waste water and sewage purposes, and to accept grants and borrow money from any such government, agency, corporation, commission or board as may be necessary or desirable for the purposes of this Act.

*Sec. 10. Determination of annual costs.* The fiscal year of the district shall be the calendar year, and the Trustees shall, prior to January 31st of each year following the acceptance of this Act, determine the total anticipated amount necessary to be raised from the participating municipalities to provide for the operation of the waste water and sewage system for that calendar year.

Said amount shall be the total of (i) regional costs, (ii) maintenance and financing costs and (iii) operating costs less (iv) with respect to regional costs any funds on hand or in the judgment of the trustees to be received during said year from other than the participating municipalities and available to pay regional costs, and (v) with respect to maintenance and financing costs and operating costs, funds on hand or in the judgment of the Trustees to be received during said year from other than participating municipalities and available to pay financing and maintenance costs and operating costs, as the case may be. As used in this Act the following terms shall have the following meanings:

"Regional costs" shall mean all costs and expenses incurred by the district to enable it to become authorized to provide waste water and sewage services on a regional basis, to develop and prepare a regional plan for treatment and disposal of waste water and sewage, together with all costs incidental thereto and not included in maintenance and financing costs or operating costs;

"Maintenance and financing costs" shall include:

*(i) Current expenses,* namely, the current expenses of repairing and maintaining the waste water and sewage system and all other expenses not otherwise specifically provided herein;

*(ii) Payment of unfunded capital outlay,* namely, outlay items the cost of which is not to be funded or paid from the proceeds of a government grant or other donation;

*(iii) Payment of interests,* namely, interest due and payable in such year on indebtedness created or assumed by the district in providing a waste water and sewage system, exclusive of interest on temporary notes in anticipation of assessments;

*(iv) Payment of principal,* namely, principal due and payable in such year on indebtedness created or assumed by the district in providing a waste water and sewage system and not to be refunded and for the payment of which indebtedness funds are not in the judgment of the Trustees otherwise available; and

*(v) Sinking fund payments,* namely, a sum equal to not less than 2% nor more than 5% of (a) that portion of the final installment of any issue of serial sewer bonds or notes created or assumed by the district, in connection with its waste water and sewage system, which, for any such issue exceeds the average annual payment of principal paid or payable thereon in each year except the last and (b) the amount of principal of any term bonds assumed or issued by the district, and which shall be turned into a separate sinking fund and there kept together with any earnings on said

sinking fund to provide for the extinguishment of that portion of said indebtedness. The money set aside for the sinking fund shall be devoted to the retirement of the obligations of the district resulting from its waste water and sewage system, and meanwhile may be invested in such securities as savings banks in the State of Maine are now or hereafter allowed to hold;

"Operating costs" shall include:

*(i) Operating expenses,* namely, the current expenses of operating the waste water and sewage system; and including interest on notes issued in anticipation of assessments;

*(ii) Deficit,* namely, any deficit incurred in the operation of said waste water and sewage system outstanding at the end of the prior calendar year for the payment of which funds are not, or in the judgment of the trustees will not, be available in the calendar year.

If a surplus exists at the end of a calendar year, it shall be transferred to a surplus account which at no time shall exceed 3% of the net book value of the assets of the district attributable to the waste water and sewage system. The trustees may add to the sinking fund so much of any excess over said 3% as they determine advisable, and any remainder shall be credited against sums otherwise to be assessed upon the participating municipalities on an equitable basis.

*Sec. 11. Apportionment of annual costs; annual sewer assessments to municipalities; obligation of municipalities to pay same.* The trustees shall annually apportion the amount determined under section 10 hereof among the participating municipalities on the following basis:

*(a) Regional costs.*

*(i)* All the regional costs shall be apportioned among all the participating municipalities, one-half according to the ratio of their respective populations to the total population of all the participating municipalities, according to the latest state or federal census, and the remainder according to the ratio of the state valuation of each participating municipality to the total state valuation of all participating municipalities.

*(b) Apportionment of maintenance and financing costs.*

*(i)* All maintenance and financing costs of facilities used by only one of the participating municipalities shall be apportioned to such municipality.

*(ii)* All maintenance and financing costs of any jointly used facility shall be apportioned by the trustees among the participating municipalities using such facility in the ratio of the percentage of use capability of such facility attributed to each participating municipality in the original design of such facility.

When a participating municipality makes first use of a facility which had previously been used by one or more participating municipalities, such participating municipality shall also be assessed for its fair share of the cost to the district of construction and related interest of said jointly used facility which has been previously assessed up to the time of the first use of said facility by such joining municipality. Such additional share shall be determined by the trustees on the same formula set forth in the prior paragraph. The trustees shall apportion said additional share to such joining municipality over a period of years equal to the term for which the original bonded indebtedness was issued, and shall make corresponding annual adjustments in the assessments of the participating municipalities previously using said facility by crediting the amount of said additional share to said participating municipalities in proportion to their respective total payments to the district on account of the cost of construction and related interest of said facility made by said participating municipalities up

to the time of first use of such facility by such joining municipality.

*(c) Apportionment of operating costs.*

*(i)* All operating costs of facilities used by only one of the participating municipalities shall be apportioned to such municipality.

*(ii)* All operating costs of any facility jointly used shall be apportioned by the trustees according to the estimated use of such facility to be made by each participating municipality until such jointly used facility has been in operation for one calendar year. Such apportionment shall be based on the engineering estimates prepared for the trustees of the initial use of such facility by each of the participating municipalities. When any jointly used facility shall have been in operation for a calendar year, the apportionment thereafter shall be based upon the measured flow of waste water and sewage entering such jointly used facility during the previous year from each participating municipality making use of such facility.

Until a participating municipality which makes its first use of a facility which had previously been used by one or more other participating municipalities, shall have used such facility for a period of a calendar year, the apportionment of its cost for such use shall be calculated by the trustees from engineering estimates prepared for the trustees of the use by such municipality compared with the use during the prior calendar year by the other participating municipalities, and the remaining costs shall be apportioned among the participating municipalities previously using such facility on measured flow in the manner described in this Section.

Any participating municipality claiming to be aggrieved by an assessment shall, within 60 days from receipt of said assessment, commence an action in the Superior Court of Cumberland County requesting the review of said assessment or any part thereof. The Superior Court shall hear and determine the cause and shall be authorized to enter such judgments and orders, including the power to remand for further findings, as it shall deem appropriate.

The court may appoint a committee of one or 3 disinterested persons who, having been sworn, shall give such notice as designated by the court, shall hear the parties and shall make a report to the court as soon as practicable, whether the assessment of the trustees should be in whole or in part affirmed or reversed, which, being accepted and judgment thereon entered, shall forthwith be certified to the clerk of the district.

A participating municipality requesting review of any assessment shall, nevertheless, remain obligated to pay and shall pay its said assessment in full within the prescribed times. If the court orders an adjustment in said assessment it shall also prescribe the manner and method by which such adjustment shall be made.

The amount so apportioned for each municipality shall, prior to March 15th in each year, be certified by the trustees to the assessors of each participating municipality. The assessors shall without further vote include the amount so certified in those amounts to be annually raised by municipal tax or assessment. The respective city or town treasurers shall pay the amount so certified to the treasurer of the district in three substantially equal installments on or before June 1st, September 1st and December 1st of that year.

A participating municipality may raise all or a portion of the amounts certified annually by the district through equitable and proportional charges against its inhabitants, corporations and other users of the waste water and sewage system of the district in each such facility.

*Sec. 12. Water use and records; billing agency.* The district, at cost, shall provide to any participating municipality up-

on written request, sufficient water use records to enable such municipality to determine sewer rates and charges and for other municipal purposes.

Upon written request from a participating municipality, the district, on a negotiated basis, may undertake to act as agent for such municipality in the rendering and collection of bills to sewer users of such municipality in accordance with the rates and charges determined by such municipality, all of which shall in no way affect the obligation of the municipality to pay its assessment as hereinbefore provided.

*Sec. 13. Books and accounts, allocation of charges between water system and sewage system.* The trustees shall maintain separate records and accounts for the waste water and sewage system, and shall allocate joint expenses and charges and receipts as between the water system and the waste water and sewage system, all in accordance with generally accepted accounting practices and procedures.

*Sec. 14. Right to inspect; rules and regulations; injunctive relief.* The officers or agents of the district shall have the right to enter all premises from which any sewer or drain is connected with any part of the system or with any sewage system connecting with the system of the district, at all reasonable hours, for inspection of plumbing and sewage fixtures, to ascertain the quantity and character of sewage discharged and the manner of discharge; and to enforce the provisions of this Act and the rules and regulations prescribed by the trustees of the district.

The trustees shall, for the proper and reasonable operation of the waste water and sewage system, adopt reasonable rules and regulations relative to the waste water and sewage system, including without limitation, regulations as to the quantity and character of any sewage, drainage or other wastes discharged into any sewage system connecting with the system of the district, but such regulations shall at least meet the minimum standards prescribed by the Water and Air Environmental Improvement Commission. Rules and regulations adopted by the trustees shall be published, from time to time, in suitable form and distributed to the participating municipalities.

The trustees may require industrial pretreatment of wastes discharged into its system or into any system connecting with its system if the trustees determine such wastes may interfere with or cause damage to its waste water and sewage system.

In addition to any other remedy, the Superior Court shall have jurisdiction upon a complaint filed by the district to restrain or enjoin any person, firm, corporation or municipality from committing any act which may damage or impair its waste water and sewage system or which is prohibited by any rule or regulation of the district. It is the intention of the Legislature that the district may seek the injunction set forth in this section without first resorting to any other form of proceedings or procedure as a condition precedent to the granting of such injunction.

*Sec. 15. Property tax exempt.* Wherever located, the property, both real and personal, rights and franchises, used in connection with said waste water and sewage system shall be forever exempt from taxation.

*Sec. 16. Withdrawal.* Following the adoption of a regional plan, the clerk of the district shall deliver or cause to be delivered to the municipal clerk of each participating municipality a copy of such regional plan, a statement of the share of the participating municipality of the regional costs set forth in section 10 hereof, and a statement of that portion of the plan which the trustees intend to carry out within such participating municipality to meet the requirements of state and federal water pollution controls and the estimated costs thereof.

Within 90 days of receipt of such plan and statements, a participating municipality may withdraw from the waste water and sewage system authorized by this Act upon approval by a majority of the legal voters of such participating municipality voting at a special election duly called and held for the purpose, in the same manner as the election relating to the approval of this Act. The costs of such election shall be borne by the participating municipality. The result of the vote in such participating municipality shall be declared by the appropriate officials thereof and due certificate thereof shall be forthwith filed by the municipal clerk of such participating municipality with the Secretary of State and with the Trustees of the Portland Water District. Whenever the result so filed shows that a majority of the legal voters of said participating municipality voting at said special election approves withdrawal from the provisions of this Act, it shall take complete effect with respect to such participating municipality approving withdrawal from the waste water and sewage system only upon (i) payment to the district by such participating municipality of its total share of regional costs as stated by the district to the municipality at the time of delivery of the copy of the plan and (ii) the filing with the district of a consent on the part of such participating municipality to pay the full cost of amendments or modifications to such plan occasioned by the withdrawal of such participating municipality. In the event of withdrawal of more than one municipality, each participating municipality shall consent to pay its proportionte cost of such amendments or modifications to the plan, as determined in the manner for allocation of Regional costs under the provisions of section 11 hereof.

If both the City of Portland and the City of South Portland withdraw from this Act in the manner above prescribed, then the authority granted hereunder to the district to create a regional waste water and sewage system shall terminate and each participating municipality shall there-

upon pay to the district its total share of regional costs as so stated, and the trustees shall thereafter be authorized to terminate such waste water and sewage system. Upon such termination the clerk of the district shall file a certificate to this effect with the Secretary of State, and upon such filing the authority granted under this Act shall cease.

The district shall assess any participating municipality voting to withdraw from the waste water and sewage system authorized by this Act for its share of the regional costs and its share of the costs of amending or modifying such regional plan in the manner prescribed for the assessment of its share of the regional costs. If the district is compelled to terminate its waste water and sewage system by the withdrawal of Portland and South Portland from said system, it shall have the authority to assess each participating municipality for its share of the regional costs in the manner prescribed herein for assessments.

As used herein the term "regional plan" shall mean a plan prepared under the direction of the Trustees of the Portland Water District for the collection, treatment and disposal of waste water and sewage within the participating municipalities. As soon as possible after it is determined which municipalities shall participate in this Act, the trustees of the district shall undertake to arrange for the preparation of such regional plan.

*Sec. 17. Emergency clause; effective date; referendum; certificates to Secretary of State.* In view of the emergency cited in the preamble, this Act shall take effect when approved by the Legislature and signed by the Governor, only for the purpose of permitting its submission to the legal voters of the Cities of Portland and South Portland at special elections called and held for such purpose. The dates of said elections for the Cities of Portland and South Portland shall be determined by the respective city councils of said cities,

but such elections shall not be held later than 60 days after the date this Act is signed by the Governor.

The result of the vote in said Cities of Portland and South Portland shall be declared by the appropriate officials of the respective cities and due certificates thereof shall be forthwith filed by the respective city clerks with the Secretary of State and with the Trustees of the Portland Water District; and if the result so filed shows that a majority of the legal voters of the City of Portland voting at said special election and a majority of the legal voters of the City of South Portland voting at said special election approve this Act, the Trustees of the Portland Water District shall forthwith certify the same to be so by causing the clerk of said district to file a certificate with the Secretary of State and with the city clerks of the Cities of Portland, South Portland and Westbrook and the town clerks of the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham.

Upon such approval by both the Cities of Portland and South Portland, all the provisions of this Act shall thereupon take effect as to the Cities of Portland and South Portland. Upon the failure of either of the Cities of Portland and South Portland to approve this Act, it shall become null and void.

The Act shall further take effect upon its approval by both the Cities of Portland and South Portland for the purpose of permitting its submission to the legal voters of the City of Westbrook and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham, at special elections called and held for said purpose in said City of Westbrook and each of said towns. The dates of said elections shall be determined by the City Council of the City of Westbrook and by the respective municipal officers of each of said towns, but such elections shall be not earlier than 60 days after this Act is signed by the Governor, nor

later than 120 days after this Act is signed by the Governor.

The result of the vote of the City of Westbrook and in each of the towns shall be declared by the appropriate officials of said city and towns and due certificates thereof shall be forthwith filed by the City Clerk of the City of Westbrook and the respective town clerks with the Secretary of State and with the Trustees of the Portland Water District, and whenever the result so filed shows that a majority of the legal voters of said city or of any of said towns voting at said special elections approves this Act, it shall take complete effect with respect to each of said city and towns so approving this Act.

Every special election held in the Cities of Portland, South Portland and Westbrook and the Towns of Cape Elizabeth, Cumberland, Falmouth, Gorham, Scarborough, Standish and Windham for the purpose of approving this Act shall be called, advertised and conducted according to the law relating to municipal elections; provided, however, that the registrar of voters or board of registration, as the case may be, of each city and town shall not be required to prepare nor shall the respective city clerks or town clerks be required to post a new list of voters for this purpose. The registrar of voters or board of registration, as the case may be, in each of said cities and towns shall be in session for 3 secular days next preceding the date set for said special elections in said cities or towns.

Each city and town shall vote only once on the acceptance of this Act.

In the case of each town (and not in the Cities of Portland, South Portland and Westbrook), a public hearing shall be held by the municipal officers on the subject of the election at least 10 days before the date for voting thereon. Notice of such public hearing shall be given by the municipal officers by causing a copy of the ballot together with the time and place of hearing, to be posted in the same manner

required for posting a warrant for a town meeting, at least 7 days before the date set for such hearing, and a return shall be made on the original notice by the municipal officers stating the manner of notice and the time when it was given.

The respective city and town clerks shall prepare the required ballots on which they shall reduce the subject matter of this Act to the following question: "Shall the Act authorizing the Portland Water District to engage in waste water and sewage services, passed by the 104th Legislature, be accepted?" The voters shall indicate their opinion of the same by a cross or check mark placed against the words "Yes" or "No".

EXHIBIT B

(EMERGENCY)

ONE HUNDRED AND FOURTH LEGISLATURE

*Legislative Document* No. 706
H. P. 535 House of Representatives, February 6, 1969

Referred to Committee on Public Utilities. Sent up for concurrence and ordered printed.

BERTHA W. JOHNSON, Clerk

Presented by Mr. Clark of Jefferson.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN HUNDRED SIXTY-NINE

AN ACT Increasing Borrowing Capacity of Waldoboro Sewer District.

*Emergency preamble.* Whereas, Acts of the Legislature do not become effective until 90 days after adjournment of the Legislature unless enacted as emergencies; and

Whereas, Medomak Canning Company is located in the area of the Waldoboro Sewer District and has a pollution problem which requires immediate correction; and

Whereas, the proper treatment and disposal of the effluent from this plant is essential to preserve the health and wellbeing of the inhabitants of the Waldoboro Sewer District; and

Whereas, it is imperative that action be taken at once to eliminate any danger to the health an well-being of said inhabitants; and

Whereas, it has been determined that the borrowing capacity of the above-named district is presently inadequate to finance the facilities needed in order to eliminate this source of pollution which exists in the district; and

Whereas, in the judgment of the Legislature these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

*Sec. 1. P. & S. L., 1963, c. 146, § 17, amended.* The first sentence of section 17 of chapter 146 of the private and special laws of 1963, as amended by section 1 of chapter 216 of the private and special laws of 1963, is further amended to read as follows:

For accomplishing the purposes of this Act, said district, by resolutions of its board of trustees, without district vote, is hereby authorized to borrow money temporarily and to issue therefor its negotiable notes, and for the purpose of renewing and refunding the indebtedness so created, of paying any necessary expenses and liabilities incurred under the provisions of this Act, including organizational and other necessary expenses and liabilities incurred by the district or the Town of Waldoboro, the district being authorized to reimburse said Town of Waldoboro for any such expense incurred or paid by it, and in acquiring properties, paying damages, laying sewers, drains and conduits, constructing, maintaining and operating a

sewage plant or system and making renewals, additions, extensions and improvements to the same and to cover interest payments during the period of construction, said Waldoboro Sewer District, by resolutions of its board of trustees, without district vote, is also hereby authorized to issue, from time to time, bonds, notes or other evidence of indebtedness of the district in one series or in separate series, in such amount or amounts, bearing interest at such rate or rates, and having such terms and provisions as the trustees shall determine; provided, however, that the total indebtedness of said district at any one time outstanding shall not exceed the sum of ~~$250,000~~ *$600,000*.

*Sec. 2. P. & S. L., 1963, c. 146, § 24, amended.* The 5th and 7th sentences of the 2nd paragraph of section 24 of chapter 146 of the private and special laws of 1963 are amended to read as follows:

In the case of a nonresident of the district, the aforesaid notice shall be given by registered *or certified* mail addressed to his last known address or by publication in a newspaper of general circulation within the district once a week for 2 successive weeks, and shall demand payment within 30 days after the mailing thereof or first publication of notice thereof as aforesaid.

At the time of the recording of any such certificate in the registry of deeds as heretofore provided the treasurer shall file in the office of the district a true copy of such certificate and shall mail a true copy thereof by registered *or certified* mail to each record holder of any mortgage on said real estate, addressed to such record holder at his last and usual place of abode.

*Sec. 3. P. & S. L., 1963, c. 146, § 27, repealed and replaced.* Section 27 of chapter 146 of the private and special laws of 1963, as enacted by section 2 of chapter 216 of the private and special laws of 1963, is repealed and the following enacted in place thereof:

*Sec. 27. Town of Waldoboro authorized to raise money to contribute to district.*

*Notwithstanding the creation of the Waldoboro Sewer District as a separate entity, the Town of Waldoboro is hereby authorized from time to time to raise and appropriate money for the purpose of providing financial assistance to said district.*

*Emergency clause.* In view of the emergency cited in the preamble, this Act shall take effect when approved.

## EXHIBIT C

## (EMERGENCY)

## ONE HUNDRED AND FOURTH LEGISLATURE

*Legislative Document* *No. 1109*
H. P. 867 House of Representatives, February 27, 1969

Referred to Committee on Public Utilities. Sent up for concurrence and ordered printed.

BERTHA W. JOHNSON, Clerk

Presented by Mr. Burnham of Naples.

## STATE OF MAINE

## IN THE YEAR OF OUR LORD NINETEEN HUNDRED SIXTY NINE

AN ACT Creating the Harrison Water District.

*Emergency preamble.* Whereas, there is an urgent need for expansion of transmission mains to increase the flow of water for fire protection purposes; and

Whereas, there is an urgent need to expand the present water system to include inhabitants presently using private sources of water supply that face possible condemnation; and

Whereas, funds and grants-in-aid are now available, which may not be available, if a water district is not formed at once; and

Whereas, it is necessary to take immediate steps to expand said mains and to ex-

pand said existing water system to protect the health and welfare of the inhabitants of said water district; and

Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

*Sec. 1. Territorial limits; corporate name and purpose.* The inhabitants of and the territory within that part of the Town of Harrison in the County of Cumberland and that part of the Town of Bridgton, more commonly referred to as North Bridgton, in the County of Cumberland, as is hereafter described: Beginning at a point on the shore of Long Lake in the Town of Bridgton, which point is due east of Maine State Highway Commission Station 165 + 00 on the Bridgton Road (State Road No. 117) which station is also 750 feet south, more or less of the junction of the Bridgton Road and Main Street in the Town of Bridgton, thence in a westerly direction to said Maine State Highway Commission Station 165 + 00 on the Bridgton Road; thence in a northerly direction to a point on the Chadbourne Hill Road which point is 2,000 feet, more or less, westerly of the intersection of the Chadbourne Hill Road and Main Street in Bridgton; thence in a northerly direction to a point on the Waterford Road (State Road No. 36) where the town line separating Bridgton and Harrison first crosses the Waterford Road (State Road No. 36); thence in an easterly direction to a *point* on the Norway Road (State Road No. 117) which point is 3,600 feet, more or less, northerly of the junction of the Norway Road and the Dawes Hill Road; thence in a southerly direction to a *point* on the Deertrees Road which point is 1,800 feet, more or less, northerly of the junction of the Deertrees Road and the Dawes Hill Road; thence in a southerly direction to a

*point* on the Dawes Hill Road which point is 1,200 feet, more or less, northerly of the junction of Dawes Hill Road and Deertrees Road; thence in a southerly and westerly direction to a *point* on the Edes Falls Road, which point is 600 feet, more or less, southerly of the junction of Edes Falls Road and School Street; thence in a westerly and southerly direction to a *point* on Front Street, also known as the Naples Road (State Road 35) which point is 2,600 feet, more or less, southerly of the junction of Front Street and School Street; thence westerly 400 feet, more or less, to a *point* on the shore of Long Lake; thence following the shore of Long Lake in a northerly, westerly, and southerly direction to the point of beginning; shall be and hereby are constituted a body politic and corporate under the name of the "Harrison Water District" for the purpose of supplying the said district and the inhabitants of said district with pure water for domestic, commercial, sanitary, industrial, agricultural and municipal purposes.

The authority granted under this charter to serve that part of the Town of Bridgton described herein, shall supersede the authority granted the Bridgton Water District to serve said area.

*Sec. 2. Powers of Harrison Water District.* Said Harrison Water District is authorized for the purposes of its incorporation to take, collect, store, flow, use, divert, distribute and convey to said district or any part thereof water from any lake, pond, stream or river, or from any surface or underground brooks, springs or veins of water, natural or artificial, within the area of the district or within the area of the Towns of Harrison or Bridgton, and it is also authorized to locate, construct and maintain, aqueducts, pipes, conduits, dams, wells, reservoirs, standpipes, hydrants, pumping stations and other necessary structures and equipment therefor, and do anything necessary to furnish water for public purposes and for the public health, comfort and convenience of the inhabitants and others of

the district, or to contract to do any and all of the foregoing things.

All incidental powers, rights and privileges necessary to the accomplishment of the main objectives herein set forth are granted to said district hereby created.

*Sec. 3. Authorized to lay mains, pipes, conduits, etc., through public ways and across private lands.* The district is authorized to lay in and through the streets, roads, ways and highways of the Towns of Harrison or Bridgton, and across private lands therein, and to maintain, repair and replace all such pipes, mains, conduits, aqueducts and fixtures and appurtenances as may be necessary and convenient for its corporate purposes, and whenever said district shall lay any pipes, mains, conduits, aqueducts and fixtures or appurtenances in any street, road, way or highway, it shall cause the same to be done with as little obstruction as practicable to the public travel, and shall at its own expense, without unnecessary delay, cause the earth and pavement removed by it to be replaced in proper condition.

*Sec. 4. Rights of eminent domain.* The said district, for the purposes of its incorporation, is authorized to take and hold, as for public uses, real estate and personal estate, and any interest therein, necessary or convenient for such purposes, by purchase, lease or otherwise and is expressly authorized to exercise the right of eminent domain, as hereinafter provided, to acquire for such purposes any land or interest therein or water rights necessary for erecting and maintaining dams, plants and works, for flowage, for power, for pumping, for supplying water through its mains, for reservoirs, for preserving the purity of the water and watershed, for laying and maintaining aqueducts and other structures for taking, distributing, discharging and disposing of water and for rights-of-way or roadways to *its sources* of supply, dams, power stations, reservoirs, mains, aqueducts, structures and lands.

The said district is authorized, for the purposes of its incorporation, to erect and maintain all dams, reservoirs and structures necessary and convenient for its corporate purposes. Nothing herein contained shall be construed as authorizing said district to take by right of eminent domain any of the property or facilities of any other public service corporation used, or acquired for future use, by the owner thereof in the performance of a public duty, unless expressly authorized thereto herein or by subsequent Act of the Legislature.

*Sec. 5. Procedure in exercising rights of eminent domain; assessment of damages; appeal procedure.* In exercising any rights of eminent domain that are conferred upon said district, the district shall file for record in the registry of deeds in Cumberland County plans of the location of lands or interest therein to be taken, with an appropriate description and the names of the owners thereof, if known. When for any reason the district fails to acquire property which it is authorized to take and which is described in such location, or if the location so recorded is defective or uncertain, it may, at any time, correct and perfect such location and file a new description thereof; and in such case, the district is liable in damages only for property for which the owner had not previously been paid, to be assessed as of the time of the original taking, and the district shall not be liable for any act which would have been justified if the original taking had been lawful. No entry shall be made on any private lands, except to make surveys, until the expiration of 10 days from such filing; whereupon possession may be had of all such lands or interest therein so taken, but title thereto shall not vest in said district until paid for.

If any person sustaining damages by any taking as aforesaid shall not agree with the trustees of said district upon the sum to be paid therefor, either party, upon petition to the county commissioners of Cumberland County, may have said damages assessed by them. The procedure and all subsequent

proceedings and the rights of appeal thereon shall be had under the same restrictions, conditions and limitations as are or may be prescribed in the case of damages by laying out of highways.

*Sec. 6. Procedure if public utility must be crossed.* In case of crossing of any public utility, unless consent is given by the company owning and operating such public utility as to place, manner and conditions of the crossing within 30 days after such consent is requested by such district, the Public Utilities Commission upon petition by the district shall determine the place, manner and conditions of such crossing, and all work on the property of such public utility shall be done under the supervision and to the satisfaction of such public utility, or as prescribed by the Public Utilities Commission, but at the expense of the district.

*Sec. 7. Trustees; how elected; first board; meetings; officers.* All of the affairs of said district shall be managed by a board of trustees composed of 5 members, all of whom shall be residents of the district, as hereinafter provided for, and elected as hereinafter provided.

*First board.* Within 14 days after the acceptance of this Act, as hereinafter provided, the selectmen of the Town of Harrison, who are especially appointed for this purpose, shall give notice of a special election of the Harrison Water District, for the purpose of selecting the first board of trustees, by posting a notice at least 30 days prior to the date set for election. The notice shall be published in one public and conspicuous place in the Town of Harrison and another in a public and conspicuous place in that part of the Town of Bridgton known as North Bridgton and said notice shall be further published in the Bridgton News. At the first election 3 of the trustees to be elected shall be bona fide residents of the Town of Harrison and live within the area of the Town of Harrison within the district, and 2 of the trustees to be elected shall be bona fide residents of the Town of Bridgton, and live within the area

of the Town of Bridgton included in the district. The candidates for office shall obtain nomination papers from the clerk of the Town of Harrison, who is appointed especially to act as clerk in this particular instance. The form of the nomination papers, the form of the ballot, etc., shall be as hereinafter provided. After the selection of the first board, the only eligibility for the office of trustee of the district shall be residents within the district, and eligibility to vote, and all subsequent trustees shall be elected as hereinafter provided in an annual election to be held on the 3rd Monday of March in each year.

As soon as convenient after their appointment, the first board of trustees shall hold a meeting at some convenient place in the district, to be called by any member thereof in writing, designating the time and place and said notice being delivered in hand to the other 4 members, not less than 2 full days before the meeting; provided that the trustees so elected may meet by agreement without such notice and upon appropriate waiver. The first order of business shall be to draw by lot to fix the terms of the trustees. Those persons elected in that part of the district which is located in the Town of Harrison shall draw lots and they shall determine a trustee to serve until the next annual meeting of the district; one to serve until one year from the next annual meeting of the district and another to serve for 2 years from the next annual meeting of the district. And likewise, those persons elected from that part of the district which is located in Bridgton shall by lot select one person to serve until one year from the next annual meeting of the district and the other to serve until 2 years from the next annual meeting of the district. Thereafter trustees shall be selected to serve for a 3-year term.

After the selection of the terms of the trustees, the trustes shall then organize by electing from their own number a president and clerk and, not necessarily from their own number, a treasurer and a registrar of voters for the District, as hereinafter pro-

vided. The trustees shall adopt a corporate seal and may adopt bylaws and perform any other acts under the powers delegated by law to them.

*Election of trustees.* The trustees to be so elected shall be chosen by a plurality vote of the legal voters within said district. All nominations of candidates so to be voted for shall be made by nomination papers signed in the aggregate for each candidate by not less than 25 qualified voters within said district. Each voter signing the nomination paper shall make his signature in person and add to it his place of residence, and each voter may subscribe to as many nominations as there are trustees to be elected and no more. Such nomination papers shall, before being filed, be submitted to the registrar of voters of the district, who shall forthwith certify thereon what number of the signatures are names of qualified voters in said district; one of the signers to each such separate paper shall swear to the truth thereof and the certificate of such oath shall be annexed to or made under the nomination papers. Such nomination papers shall be filed with said clerk of the district at least 7 days, exclusive of Sundays, previous to the day of such election. With such nomination papers shall also be filed the consent in writing of the person or persons nominated. All nomination papers being filed and being in apparent conformity with the foregoing provisions, shall be deemed to be valid, and if not in apparent conformity, they may be seasonably amended under oath. In case any candidate who has been duly nominated under the provisions hereof shall die before the day of election, or shall withdraw in writing, the vacancy may be supplied in the manner herein provided for such nominations. The name so supplied for the vacancy shall, if the ballots have not been printed, be placed on the ballots instead of the original nomination; or, if the ballots have been printed, new ballots containing the new nomination shall, if practicable, be furnished, or slips containing the new nomination shall be printed under the direction of the district clerk, which may be pasted in proper place upon the ballots, and thereafter shall become part of said ballots as if originally printed thereon.

*Form of ballot.* The ballot shall be substantially as follows: It shall contain the names of all candidates so nominated printed in one column under the heading, "For Trustees of Harrison Water District." Above such heading shall be printed "Vote for two," or such number as may be appropriate, "Trustees." Make a cross (X), or a check mark (√), to the right of each name voted for. As many blank spaces shall be left after the name of the candidates as there are trustees to be elected, in which the voter may by writing insert the name or names of any person or persons for whom he desires to vote. In casting his ballot the voter shall mark a cross (X), or a check mark (√), against and to the right of such names on such ballot as he desires to vote for, not to exceed the number of trustees so to be elected. If the voter shall desire to vote for any person or persons whose name or names are not on the printed ballot, he may fill in such name or names in the blank spaces left therefor by writing the name therein. Where the voter so adds by writing in such new name or names, his vote for such new name or names shall be counted therefor although he may fail to mark a cross (X), or a check mark (√), against the same. The result of such election shall be declared by said trustees and due certificates thereof filed with the district clerk. All trustees shall serve until their successors are elected and qualified.

*Meeting of trustees.* Each year after the election of a trustee, or trustees, said trustees shall forthwith hold a meeting to elect officers as hereafter provided. They shall organize by the election of a president and clerk, adopt a corporate seal, and, when necessary may choose a treasurer and all other needful officers and agents for the proper conduct and management of the affairs of said District. They may also ordain and establish such bylaws as are necessary for their own convenience and the proper management of the affairs of the district. Whenever the term of office of a

trustee expires, his successor shall be elected by a plurality vote by the inhabitants of said district, and upon nomination made as herein provided for the election of trustees; and for the purpose of such election a special election shall be called and held on the first Monday of March in each year, the same to be called by the trustees of said district in the same manner as town meetings are called and for this purpose, the trustees are vested with the powers of selectmen of towns. The trustees so elected shall serve the full term of 3 years; and in case any vacancy arises in the membership of the board of trustees, it shall be filled in like manner for the unexpired term by special election to be called by the trustees of the District. When any trustee ceases to be a resident of the district, he shall vacate such office of trustee and the vacancy shall be filled as aforesaid. All trustees shall be eligible to re-election, but no person holding the office of selectman or road commissioner in the Towns of Harrison or Bridgton shall be eligible to nomination or election as trustee. Said trustees may procure an office and incur such expenses as may be necessary. Each trustee shall receive for his services in whatever capacity, compensation as determined by said board, but said compensation shall not exceed $200 per annum.

The trustees shall appoint a registrar of voters for said district who may also be the registrar of voters for the Town of Harrison, and fix his salary. It shall be the registrar's duty to make and keep a complete list of all the eligible voters of said disrict, and the list prepared by him as provided by the laws of the State of Maine, shall govern the eligibility of any voter. In determining the eligible voters of the district the registrar of voters shall exclude from his lists and from all check lists the legal voters who are resident outside the territorial limits of said water district as defined in this Act, and all warrants issued for elections by the trustees shall be varied accordingly to show that only the voters resident within the territorial limits of said water district are entitled to vote thereunder.

*Sec. 8. Annual report.* The trustees shall make and publish an annual report, including a report of the treasurer, and such report may be included in, and published as part of, the annual town reports of the respective Towns of Harrison and Bridgton.

*Sec. 9. District and towns authorized to make and assume contracts.* Said district, through its trustees, is authorized to contract with persons and and corporations, including the Towns of Harrison and Bridgton, and said Towns of Harrison and Bridgton are authorized to contract with it, for the supply of water for municipal purposes.

All valid contracts now existing between the Harrison Water Company and any persons, corporations or municipal corporations for supplying water in the Town of Harrison or the Town of Bridgton shall be assumed and carried out by said Harrison Water District.

*Sec. 10. Authorized to acquire property and franchises of Harrison Water Company.* The said district, through its trustees, is hereby authorized to acquire by purchase, all of the entire plant, properties, franchises, rights and privileges owned by Harrison Water Company located within the Towns of Harrison and Bridgton, including all lands, waters, water rights, reservoirs, pipes, machinery, fixtures, hydrants, tools and all apparatus and appliances used or usable in supplying water in said district. Said water district is further authorized and empowered to acquire by the exercise of the right of eminent domain, which right is hereby expressly delegated to said district for said purpose, the entire plant, properties, franchises, rights and privileges, except cash assets and accounts receivable, owned by Harrison Water Company, situate in the Towns of Harrison and Bridgton, including all lands, waters, water rights, dam structures, reservoirs, pipes, machinery, fixtures, hydrants, tools and all apparatus and appliances used or usable in supplying water in the

area of the district, and if and when so acquired, the said district, in addition to the powers conferred by this Act, shall have and enjoy and be entitled to exercise all rights, privileges and franchises of said Harrison Water Company.

*Sec. 11. Procedure in case trustees fail to agree on terms of purchase of property and franchise of Harrison Water Company.* In case the said trustees fail to agree with the Harrison Water Company upon terms of purchase, then said water district, through the trustees aforesaid, is hereby authorized to take said properties, interest and franchises of said Harrison Water Company as set forth in section 10, in the manner hereinafter provided wherein the Harrison Water Company and its mortgagees, if any, or those having an interest in any realty which is of record, shall be the parties defendant. Said water district, through its trustees, is hereby authorized to file a petition in the clerk's office of the Superior Court for the County of Cumberland, addressed to any justice thereof who, after notice to said defendant aforesaid, shall, after hearing and within 60 days after the filing of said petition, appoint 3 disinterested appraisers, at least one of whom shall be learned in the law and none of whom shall have residence in Cumberland County, for the purpose of fixing the valuations of the plant, property and franchises of said Harrison Water Company described in section 10. The petition shall also be filed in the registry of deeds in the County of Cumberland and the filing of said petition of taking shall immediately vest in the Harrison Water District all interests of Harrison Water Company insofar as the interests of said Harrison Water Company pertains to the water system, including all lands, water, water rights, reservoirs, pipes, machinery, fixtures, hydrants, tools and all apparatus and appliances used or usable in supplying water, except cash assets and accounts receivable. The court may order under proper terms the production for inspection by the trustees or the said appraisers of all books and papers pertaining to the issue on petition for same by the petitioner unless same are voluntarily produced. The said appraisers shall have the power to administer oaths. The appraisers so appointed shall, after due notice and hearing, fix the valuation as of the date of filing said petition of said plants, properties and franchises at what they were fairly and equitably worth so that said water company shall receive just compensation for same. The report of said appraisers or of a majority of them, together with the report of a stenographer certified by said appraisers as correct, shall be filed in said clerk's office within 6 months after their appointment and any Justice of the Superior Court may after notice and hearing confirm or reject the same or recommit it if justice so requires. Upon the confirmation of said report, the court so sitting shall thereupon make final decree upon the entire matter, including the application of the purchase money and transfer of the property, jurisdiction over which is hereby conferred, and with the power to enforce said decree as in equity cases. All findings of fact by said court and the appraisers shall be final, but any party aggrieved may take an appeal as to any matters of law, the same to be accompanied by so much of the case as may be necessary to a clear understanding of the questions raised thereby. Such appeal shall be claimed on the docket within 30 days after such final decree is signed, entered and filed and notice thereof has been given by the clerk to the parties and said appeal so claimed shall be made up, allowed and filed within said time unless further time is granted by the court or by agreement of the parties. They shall be entered at the next term of the law court to be held after the filing of such appeal and there heard, unless otherwise agreed, or the law court for good cause shall order further time for hearing thereon. On payment or tender by said district of the amount determined by the final decree together with interest thereon at the legal rate from the date of the recording of the taking in the registry of

deeds, and the performance of all other terms and conditions imposed by said court, the liability of said Harrison Water District to the Harrison Water Company shall cease.

If a vacancy occurs at any time in said board of appraisers from any cause, such sitting justice, or in case of his inability to act, any justice of said court may, after notice and hearing, appoint a new appraiser or appraisers and make all such orders for hearing said cause by the appraisers, anew or for any extension of time for making their award, or otherwise, as the circumstances of the cause may require. Nothing herein contained shall preclude said district from acquiring said properties from said company at any time by mutual agreement.

*Sec. 12. Authorized to receive governmental aid, to borrow money, to issue bonds and notes.* For accomplishing the purposes of this Act, and for such other expenses as may be necessary for the carrying out of said purposes, said district, through its trustees, without vote of the inhabitants, is authorized to receive both state and federal aid grants; to borrow money temporarily and to issue therefor its negotiable notes; for the purpose of renewing and refunding the indebtedness so created, of paying any necessary expenses and liabilities incurred under the provisions of this Act, including organizational and other necessary expenses and liabilities, whether incurred by the district or the Towns of Harrison and Bridgton, the district being authorized to reimburse said Towns of Harrison and Bridgton for any such expense incurred by them and in acquiring properties, paying damages, laying pipes, mains, aqueducts and conduits, constructing, maintaining and operating a water plant or system and making renewals, additions, extensions and improvements to the same and to cover interest payments during the period of construction. Said district, through its trustees, without the vote of its inhabitants, but only with the approval of the Public Utilities Commis-

sion, is also authorized to issue, from time to time, bonds, notes or other evidence of indebtedness of the district in one series, or in such amount or amounts, bearing interest at such rate or rates, selling at par, or at a discount or at premium and having such other terms and provisions as the trustees shall determine.

Said bonds, notes and evidences of indebtedness may be issued to mature serially or made to run for such periods as the trustees may determine. Bonds, notes or evidences of indebtedness may be issued with or without provisions for calling the same prior to maturity, and if callable, may be made callable at par or at such premium as the trustees may determine. All bonds, notes or other evidences of indebtedness shall have inscribed upon their face the words "Harrison Water District," shall be signed by the treasurer and countersigned by the chairman of the board of trustees of the district, and if coupon bonds are issued, the interest coupons attached thereto shall bear the facsimile signature of the treasurer.

All such bonds, notes and evidences of indebtedness so issued by the district shall be legal obligations of the district, which is declared to be a quasi-municipal corporation within the meaning of the Revised Statutes of 1964, Title 30, section 5053, and all provisions of said section shall be applicable thereto.

The district may refund and reissue, from time to time, in one or in separate series, its bonds, notes and other evidences of indebtedness, and each authorized issue shall constitute a separate loan. All bonds notes and evidences of indebtedness issued by said district shall be legal investments for savings banks in the State of Maine, and shall be free from taxation.

*Sec. 13. Property tax exempt.* The property, both real and personal, rights and franchises of said district, shall be forever exempt from taxation in the Towns of Harrison and Bridgton.

*Sec. 14. Rates; application of revenue; sinking fund.* All individuals, firms and corporations, whether private or public, shall pay to the treasurer of said district the rates established by said board of trustees for the services used by them, and said water rates shall be uniform within the territory supplied by the district, and the water rates shall be subject to the approval of the Public Utilities Commission.

Said water rates shall be so established as to provide revenue for the following purposes:

*I. Current expenses.* To pay the current expenses for operating and maintaining the water system and to provide for such extensions and renewals as may become necessary.

*II. Payment of the interest.* To provide for payment of the interest on the indebtedness created or assumed by the district.

*III. Sinking Fund.* To provide each year a sum equal to not less than 1% nor more than 5% of the entire indebtedness created or assumed by the district, which sum shall be turned into a sinking fund and there kept to provide for the extinguishment of said indebtedness. The money set aside for the sinking fund shall be devoted to the retirement of the obligations of the district or invested in such securities as fiduciaries or trustees in the State of Maine are now or hereafter allowed to hold. The trustees may, in their discretion and in lieu of the establishment of a sinking fund, issue the bonds of the District so that not less than 1% of the amount of the bonds so issued shall mature and be retired each year.

*IV. Remaining surplus.* If any surplus remains at the end of the year, it may be turned into the sinking fund.

*Sec. 15. Existing statutes not affected; rights conferred subject to provisions of law.* Nothing herein contained is intended to repeal, or shall be construed as repealing the whole or any part of any existing statute, and all the rights and duties herein mentioned shall be exercised and performed in accordance with all the applicable provisions of the Revised Statutes of 1964, Title 35, and all acts amendatory thereof and additional thereto, to the extent that said Title 35 and said amendments thereto affect the operations of the district.

*Sec. 16. Act void unless property and franchise of Harrison Water Company is acquired.* If said district, pursuant to the provisions hereof, shall fail to purchase or file its petition to take by eminent domain, within one year from the date of the first meeting of the board of trustees, provided in section 7 hereof, the plant, properties, franchises, rights and privileges owned by Harrison Water Company and used or usable in supplying water to a part of the Town of Harrison and to that part of the Town of Bridgton known as North Bridgton, then this Act shall be inoperative, null and void.

*Emergency clause; effective date; referendum; certificate to Secretary of State.* In view of the emergency cited in the preamble, this Act shall take effect when approved, only for the purpose of permitting its submission to the legal voters of the District at a special election to be called and held for the purpose by the municipal officers of the Town of Harrison, which meeting shall be called and held within 30 days of the effective date of this Act. Said special election shall be called, advertised and conducted according to the laws relating to municipal elections to the extent applicable hereto. In addition to the posting of the necessary warrant in the Town of Harrison, the municipal officers shall cause a copy of the warrant calling said special meeting, duly attested, to be posted in accordance with law in a conspicuous public place in that part of the Town of Bridgton included within the area of the District. The registrar of voters of the Town of Bridgton shall immediately and not later than two weeks

after the effective date of this Act prepare a list of the eligible voters of the Town of Bridgton who live within the area of the district, and forward said list, so prepared, to the registrar of voters of Harrison. The registrar of voters of Harrison shall likewise prepare a list of the eligible voters of the Town of Harrison who live within the area of the district and shall combine therewith the list forwarded from the registrar of voters of Bridgton. This list shall become the legal list to be used at said special election. Persons claiming to be eligible voters in this special election whose names do not appear on the list so prepared shall present their claims to be listed as eligible voters to the registrar of voters of the Town of Harrison who shall be in session on the day preceding said special election to hear and determine such claims. After the list is complete, the registrar of voters of Harrison shall compute the total number of eligible voters on said list and certify the list and the total to the municipal officers of Harrison so that it will be available on the date of said special election.

The town clerk of Harrison shall prepare the required ballots. He shall reduce the subject matter of this Act to the following question: "Shall the Act creating the Harrison Water District, passed by the 104th Legislature, be accepted?" The voters shall indicate by a cross or check mark placed against the words "Yes" and "No" their opinion of the same.

The result of the vote in said district shall be declared by the municipal officers of the Town of Harrison and due certificate thereof filed by the town clerk of Harrison with the Secretary of State and if said result so filed shows that a majority of the vote is for approval of this Act, it shall take complete effect; provided, that the total number of votes cast for or against the acceptance of this Act equals or exceeds 20% of the total eligible voters which had been previously determined by the certificate and list filed by the registrar of voters of Harrison.

Failure of approval of this Act at such first meeting shall not be construed to prevent its resubmission for acceptance at any subsequent meeting called for the purpose in accordance with the terms hereof held within 2 years from the effective date of this Act. The municipal officers of the Town of Harrison and the registrar of voters of the Town of Bridgton are vested with authority as hereinbefore provided.

EXHIBIT D

(EMERGENCY)

ONE HUNDRED AND FOURTH LEGISLATURE

*Legislative Document* No. 103
H. P. 94 House of Representatives,
 January 9, 1969
Referred to Committee on Judiciary. Sent up for concurrence and ordered printed.

BERTHA W. JOHNSON, Clerk

Presented by Mr. Page of Fryeburg.

STATE OF MAINE

IN THE YEAR OF OUR LORD NINETEEN HUNDRED SIXTY-NINE

AN ACT to Amend the Charter of the Fryeburg Water Company by Granting Certain Additional Powers and Ratifying and Confirming Certain Acts of said Corporation.

*Emergency preamble.* Whereas, Acts of the Legislature do not become effective until 90 days after adjournment unless enacted as emergencies; and

Whereas, appropriate facilities for the Fryebrug Water Company are necessary to protect the health of the inhabitants of Fryeburg; and

Whereas, it is imperative that action be taken at the earliest moment to bring adequate facilities to the inhabitants of Frye-

burg to insure a pure and healthful water supply; and

Whereas, in the judgment of the Legislature these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

*Sec. 1. P. & S. L., 1883, c. 268, § 2, amended.* Section 2 of Chapter 268 of the private and special laws of 1883, as amended by section 1 of chapter 3 of the private and special laws of 1917, is further amended to read as follows:

*Sec. 2. Company may hold real and personal estate.* Said corporation may hold real and personal estate necessary and convenient for the purposes aforesaid ~~not exceeding in amount one hundred thousand dollars~~.

*Sec. 2. P. & S. L., 1883, c. 268, § 4, repealed and replaced.* Section 4 of chapter 268 of the private and special laws of 1883 as repealed and replaced by section 2 of chapter 3 of the private and special laws of 1917, is repealed and the following enacted in place thereof:

*Sec. 4. Capital stock. The amount of capital stock of said corporation, all of which shall be non-assessable when issued, and a part of which may be preferred stock, shall be fixed from time to time by the stockholders of said corporation; provided, that no capital stock shall be issued without the prior approval of the Public Utilities Commission.*

*Sec. 3. P. & S. L., 1883, c. 268, § 11, amended.* Section 11 of chapter 268 of the private and special laws of 1883, as enacted by section 3 of chapter 3 of the private and special laws of 1917, is amended to read as follows:

*Sec. 11. Former acts ratified.* All previous acts of said corporation in acquiring, purchasing and holding real and personal estate necessary and convenient for the purposes of its aforesaid incorporation, in excess of ~~ten thousand dollars~~ *$100,000* are hereby ratified and confirmed.

*Sec. 4. P. & S. L., 1883, c. 268, § 13, additional.* Chapter 268 of the private and special laws of 1883, as amended by chapter 3 of the private and special laws of 1917, is further amended by adding a new section 13, to read as follows:

*Sec. 13. Corporation may issue bonds. The corporation may, subject to the approval of the Public Utilities Commission, issue its bonds for the construction of its works, of any and all kinds upon such rates and time as it may deem expedient, and secure the same by mortgage of its franchise and property.*

*Emergency clause.* In view of the emergency cited in the preamble, this Act shall take effect when approved.

## ANSWER OF THE JUSTICES

### TO THE HONORABLE SENATE OF THE STATE OF MAINE:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answer to the question propounded on March 20, 1969.

QUESTION (I): Do any of the limitations, against the passage of an Emergency Bill, contained in Article IV, Part Third, Section 16, of the Constitution of Maine, prohibit the passage of L. D. #919, AN ACT to Expand the Purposes of the Portland Water District to Authorize it to Engage in Treatment and Disposal of Sewage, as an emergency measure?

ANSWER: We answer in the negative.

The pertinent portion of Section 16 of Part Third of Article IV of our Con-

stitution provides "An emergency bill shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety; and shall not include (1) an infringement of the right of home rule for municipalities, (2) a franchise or a license to a corporation or an individual to extend longer than one year, or (3) provision for the sale or purchase or renting for more than five years of real estate."

 The "right of home rule" constitutionally preserved for municipalities, applies, with certain exceptions not here relevant, to cities, towns and plantations, 1 M.R.S.A. § 72, Par. 13, not quasi-municipal corporations. The district here contemplated includes the inhabitants of several towns for each of which is provided a referendum. There is no infringement of home rule. Opinion of the Justices, 153 Me. 469, 475, 145 A.2d 250.

Whether or not a corporate franchise is extended contrary to constitutional prohibition depends upon definition. The Portland Water District was created by Chapter 433 P. L. 1907 as a "public municipal corporation" which, as a quasi-municipal corporation, was held in Kennebec Water District v. City of Waterville, 96 Me. 234, 246, 52 A. 774, 779, to be "not only a body corporate, but also a body politic." See also Augusta v. Augusta Water District, 101 Me. 148, 152, 63 A. 663.

"The creation of a body politic and corporate is not the granting of a franchise or license within the meaning of the constitutional prohibition." Opinion of the Justices, *supra*.

It is not necessary at this time to consider whether the word "corporation" applies to other than private corporations.

 The extension of corporate power which is neither a franchise nor a license in the first instance, does not become a franchise or license by virtue of such extension.

 The constitutional proscription against the sale, purchase or renting for more than 5 years of real estate reflects, we believe, historical concern with the possibility of emergency legislation disposing of, or incumbering without referendum, public lands. That proscription is not applicable to the present proposition.

The Legislature is empowered to find that the immediate enactment of L. D. #919 is necessary for the preservation of the public peace, health or safety, in which event its passage as an emergency bill would not be prohibited by Section 16.

QUESTION (II–A): Does the limitation upon the Legislature's power to pass an emergency measure, as follows: "and shall not include (1) an infringement of the right of home rule for municipalities," found in Article IV, Part Third, Section 16 of the Constitution of Maine, prohibit the passage of L. D. #706, AN ACT Increasing Borrowing Capacity of Waldoboro Sewer District, as an emergency measure?

ANSWER: We answer in the negative.

The proposed legislation seeks to increase the borrowing capacity of the Waldoboro Sewer District through emergency procedure as provided by Section 16, in Article IV, Part Third of the Constitution of Maine, and the question now raised is whether the Waldoboro Sewer District is a municipality within the meaning of that term as used in the exception clause of Section 16 to the effect that emergency legislation shall not include an infringement of the right of home rule for municipalities.

 Our Court has recognized a clear-cut distinction between municipalities and quasi-municipal corporations, and, absent express constitutional limitations, may not entirely deny the power of the Legislature to create, wholly or partly, in town or city limits different public corporate bodies for distinct and different purposes. Kelley v. Brunswick School District

(1936), 134 Me. 414, 187 A. 703. Although when the exclusion clause was sent to the people by the Legislature of 1907 municipal districts were not as common as they have become since its adoption, nevertheless we hold that the Legislature had the distinction well in mind when they limited the exclusionary clause of the constitution to municipalities without any suggestion that the term include quasi-municipal corporations. Cities and towns are true municipal corporations exercising the functions of self-government, distinct in concept from the term "municipality." The Legislature has indicated expressly what the lawmakers have in mind when using the term "municipality" i. e. that it includes only cities and towns. 30 M.R.S.A. § 1901(6); 1 M.R.S.A. § 72(13). A sewer district is not a municipality. See Fountain City Sanitary District v. Knox County Election Commission (1957), 203 Tenn. 26, 308 S.W.2d 482.

QUESTION (II–B): If the answer to Question A is in the affirmative, will the constitutional deficiency be cured if the Legislature requires a vote of the inhabitants of the Waldoboro Sewer District before L. D. #706 shall become effective as law?

ANSWER: Since L. D. #706 is constitutional as emergency legislation, we do not reach Question II–B.

QUESTION (III): Does the limitation upon the Legislature's power to pass an emergency measure, as follows: "and shall not include a franchise or license to a corporation or an individual to extend longer than one year" found in Article IV of Part Third, Section 16 of the Constitution of Maine, prohibit the passage of L. D. #1109, AN ACT to Create the Harrison Water District, as an emergency measure?

ANSWER: We answer in the negative.

■ The proposed Act provides for the creation not only of a body corporate but also a body politic. Its purposes will be purely public, it being invested with the power and duty of maintaining a public water supply. Augusta v. Augusta Water District, 101 Me. 148, 63 A. 663.

■ "The creation of a body politic and corporate is not the granting of a franchise or license within the meaning of the constitutional prohibition." Opinion of the Justices, 153 Me. at 475, 145 A.2d at 253.

QUESTION (IV): Do any of the limitations, against the passage of an emergency measure, contained in Article IV, Part Third, Section 16, of the Constitution of Maine, prohibit the passage of L. D. #103, AN ACT to Amend the Charter of the Fryeburg Water Company by Granting Certain Additional Powers and Ratifying and Confirming Certain Acts of said Corporation, as an emergency measure?

ANSWER: We answer in the negative.

Section 16 excludes from matters which may be the subject of emergency legislation:

"1. an infringement of the right of home rule for municipalities,

"2 a franchise or a license to a corporation or an individual to extend longer than one year, or

"3 provision for the sale or purchase or renting for more than five years of real estate."

As the Fryeburg Water Company is a private corporation no infringement of home rule is involved and no issue concerning purchase, sale or renting of real estate is presented.

We conclude that the issue presented by this question is whether the prohibition concerning franchises and licenses which are to extend longer than one year applies to L. D. #103.

The charter which the Fryeburg Water Company received in 1883 contained no limitation in time and could not, in the

first instance, have been granted through emergency legislation. It would follow that any addition to its purposes or extension of its area of service by amendment of its charter could not be the subject of emergency legislation.

■ The 1883 charter empowered the Company to convey "to the village of Fryeburg and vicinity, a supply of pure water for domestic and other purposes." L. D. #103 does not seek to enlarge the nature of this purpose or to extend the area of its operation. The enactment of the proposed Legislation would reflect legislative determination that present conditions require an extension of the Company's physical facilities and of its financing methods to enable it more properly to carry out the purposes for which it was chartered.

The Legislature is empowered to find that the immediate enactment of L. D. #103 is necessary for the preservation of the public peace, health or safety, in which event its passage as an emergency bill would not be prohibited by Section 16.

QUESTION (V): In view of the provisions of the Maine Sanitary District Enabling Act, 38 M.R.S.A. Chapter 11, a general law authorizing the formation of sanitary districts by two or more municipalities under certain terms and conditions, is it within the power of the Legislature to expand by special act of the Legislature the authority of the Portland Water District, a quasi-municipal corporation, to perform certain governmental functions, namely, the function of assisting certain municipalities in the treatment and disposal of sewage?

ANSWER: We answer in the affirmative.

Article IV, Part Third, Section 14, reads as follows:

"Section 14. Corporations shall be formed under general laws, and shall not be created by special Acts of the Legislature, except for municipal purposes, and in cases where the objects of the corporation cannot otherwise be attained; *and, however formed, they shall forever be subject to the general laws of the State*." (Emphasis supplied.)

L. D. #919, "AN ACT to Expand the Purposes of the Portland Water District to Authorize it to Engage in Treatment and Disposal of Sewage," does not provide for the formation of a corporation but rather extends the powers and duties of an existing entity to enable it to render service to certain municipalities.

Where applicable, it will be subject to the general law. In the discussion of this subject found in Associated Hospital Service of Maine v. Mahoney, et al. (1965), 161 Me. 391 at 402, 213 A.2d 712 et seq., it is made apparent that the general law supersedes only when conflict arises between provisions of the general law and the provisions of the special legislation. No such conflict is discovered in the present instance.

Section 1062 of 38 M.R.S.A. contains the following language pertinent here:

"A sanitary district consisting of a municipality, 2 or more municipalities, * * * *may only be formed* where the Water and Air Environmental Improvement Commission finds that there is a need * * * for the accomplishment of the purpose of providing an adequate, efficient system and means of collecting, conveying, pumping, treating and disposing of domestic sewage and industrial wastes * * * *and that such purposes cannot be effectively accomplished* * * * *by any existing public agency or agencies* * * *." (Emphasis supplied.)

Section 1066 further provides:

"Section 1066. Provisions supplemental to other law. This chapter shall be deemed to provide *an additional and alternative method* for the doing of the things authorized thereby, and shall be regarded as *supplemental and additional* to powers conferred by other laws and

**338**

shall not be regarded as in derogation of any powers now existing." (Emphasis supplied.)

The Maine Sanitary District Enabling Act does not cover the same subject matter or conflict with proposed L. D. #919 in that the general law does not limit or exclude the use of existing chartered districts which can most conveniently and practically be employed to accomplish the desired purpose. The limitation upon the intended scope of the general law is emphasized by the provision that a Sanitary District is not to be formed under 38 M.R.S.A., Chapter 11, where the desired purposes can be effectively accomplished by an existing public agency. The enactment of L. D. #919 will impliedly recognize that the Portland Water District is such an existing agency. Moreover, the quoted provisions of Section 1066, supra, make abundantly clear that the method provided for the forming of Sanitary Districts by one or more municipalities under general law is intended to be "supplemental and additional" to other methods differently conceived and based. The limitations thus imposed upon the use of the general law effectively prevent it from conflicting with or superseding the special legislation contemplated in L. D. #919.

Dated at Augusta, Maine, this seventh day of April, 1969.

Respectfully submitted:

DONALD W. WEBBER

WALTER M. TAPLEY, Jr.

HAROLD C. MARDEN

ARMAND A. DUFRESNE, Jr.

RANDOLPH A. WEATHERBEE

I respectfully request that I be excused from answering the questions.

ROBERT B. WILLIAMSON
Chief Justice